DANIEL R. SOUTHARD, SAMUEL D. TOMPKINS, WILLIAM L.
THOMPSON, MATILDA BURKS, JOSEPH R. TUNSTALL, JOHN
BURKS, JAMES BURKS, SAMUEL BURKS, CHARLES BURKS, AND
MARY BURKS (the four last named by WILLIAM L. THOMP-
SON, their next friend,) *v.* GILBERT C. RUSSELL.

A bill of review, in a chancery case, cannot be maintained where the newly discovered
evidence, upon which the bill purports to be founded, goes to impeach the character
of witnesses examined in the original suit.
Nor can it be maintained where the newly discovered evidence is merely cumulative,
and relates to a collateral fact in the issue, not of itself, if admitted, by any means
decisive or controlling : such as the question of adequacy of price, when the main
question was, whether a deed was a deed of sale or a mortgage.
Where a case is decided by an appellate court, and a mandate is sent down to the
court below to carry out the decree, a bill of review will not lie in the court below
to correct errors of law alleged on the face of the decree. Resort must be had to
the appellate court.
Nor will a bill of review lie founded on newly discovered evidence, after the publica-
tion or decree below, where a decision has taken place on an appeal, unless the
right is reserved in the decree of the appellate court, or permission be given on an
application to that court directly for the purpose.

·THIS was an appeal from the Circuit Court of the United
States for the District of Kentucky, sitting as a court of equity.
Being a continuation of the case of Russell *v.* Southard and
others, reported in 12 Howard, 139, it is proper to take it up
from the point where that report left it.
In 12 Howard, 159 it is said, " After the opinion of the court
was pronounced, a motion was made on behalf of the appellees
for a rehearing and to remand the cause to the Circuit Court
for further preparation and proof, upon the ground that new
and material evidence had been discovered since the case was
heard and decided in that court. Sundry affidavits were filed,
showing the nature of the evidence which was said to have
been discovered."
The reporter abstained from stating the substance of these
affidavits in consequence of the following order, which was in-
dorsed upon them in the handwriting of Mr. Chief Justice Taney.
" The court direct me to say, that these affidavits are not to
be inserted in the report, as they implicate the character of indi-

viduals who can have no opportunity of offering testimony in their defence. The reporter will merely state, in general terms, that affidavits were filed to support the motion."

As the present case turned chiefly upon the contents of these affidavits (which were made the groundwork for the bill of review) it becomes necessary to state them now. They were affidavits to sustain the two following points :

1. That Dr. Wood, a witness for Russell, was bribed either by him or his attorney, Stewart; that Wood had in his possession a note given to him by Stewart for about three hundred dollars, then past due; that Wood had applied to a person named Addison to collect it for him, and left the note in his possession for that purpose; and that Wood had confessed to James J. Dozier, Esq., that the note had been given to him for his testimony in the case.

2. The following affidavit of George Hancock.

" I, George Hancock, state that some short time previous to the sale by Col. Gilbert C. Russell, of his farm near Louisville, to James Southard, he offered to sell it to me for five thousand dollars, and he made the same offer to my sister, Mrs. Preston. I thought it a speculation, and would have bought it but for the reputation the place bore for being extremely sickly. He also explained to me the reason why he had given so large a price for the place, which it is not deemed necessary here to state, and which satisfied me that he knew he was giving much more than its value, at the time he made the purchase.

GEORGE HANCOCK."

Upon these affidavits, the motion for a rehearing was made and overruled; the opinion of the court, overruling the motion, bei g recorded in 12 Howard, 158.

The mandate went down to the Circuit Court, and was there filed at May term, 1852. The Circuit Court decreed that the conveyance from Russell to Southard was a mortgage, and that Russell was entitled to redeem; and in further pursuance of the opinion of the Supreme Court that the case was not then in a condition for a final decree in respect to the other defendants, it was remanded to the rules.

At the same term, namely, in June, 1852, Southard and the other appellants moved the court for leave to file a bill of review of the decree rendered at the present term, and in support of the motion presented their bill, and read the following documents, namely :

The affidavits of James Guthrie, Willett Clarke, Daniel S. Rapelge, U. E. Ewing, Thomas G. Addison, George Hancock, Charles M. Truston, John P. Oldham, J. C. Johnston, D. F. Clark, and of R. F. Baird, and a paper purporting to be an ex-

tract from a letter from Russell to J. W. Wing, and a copy of the deed from G. C. Russell to Joseph B. Stewart. And the said Russell, by his counsel, opposed the motion, and objected that the grounds made out were insufficient, and read in his behalf the documents which follow: — The affidavits of Elias R. Deering, Elijah C. Clark, Robert F. Baird, J. B. Stewart, Philip Richardson, and of Robert F. Baird, a copy of the record of Burks against Southard, and a copy of the opinion of the Supreme Court of the United States upon a new hearing, with the affidavits attached thereto.

After argument, the court gave leave to the complainants to file their bill of review; whereupon the defendant, Russell, moved the court to strike from the bill all that portion relating to champerty and all that portion relating to the explanation of the evidence of J. C. Johnston, by the introduction of his affidavits, and all other parts of said bill which is designed to explain the evidence already in the original record. The court overruled the motion, but reserved all the questions of the competency and effect of the matters the defendant moved to have stricken from the bill, to be decided when they may be made in the progress of the cause, or on the final hearing thereof.

In September, 1852, Russell filed his answer.

The substance of the bill and answer are stated in the opinion of the court.

In May, 1853, the Circuit Court dismissed the bill with costs, upon the ground that "there is not sufficient cause for setting aside said decree of the Supreme Court of the United States, entered here, according to the mandate of said Supreme Court."

From this decree, the complainants appealed to this court.

It was submitted on a printed argument by *Mr. Nicholas*, for the appellants. On the part of the appellees, it was argued, orally, by *Mr. Johnson*, and in print by *Mr. Robertson* and *Mr. Morehead.*

*Mr. Nicholas* reviewed the case as it stood upon the former testimony, with a view of showing the value of that now introduced for the first time. The only parts of the argument which can be noticed in this report are those which related to the two subjects mentioned in the opinion of the court, namely:

1. The new evidence of Mr. Hancock relating to the inadequacy of price.

2. The bribery of Dr. Wood, by Russell, the original complainant.

1. The substance of Hancock's testimony is given above in the affidavit, which was filed for a rehearing.

(Upon this point, Mr. Nicholas's argument was as follows.)

Hancock's testimony presents two questions; first, its materiality; secondly, its admissibility as newly discovered proof.

1. No single fact could shed so much clear light on the case as the offer to sell, and the anxiety to sell at $5,000. It furnishes an unerring key to the interpretation of the cotemporaneous written proposition made by R. to S. Thus interpreted, it shows his willingness, in a manner neither to be mistaken or misrepresented, to take about $6,000; one sixth cash, balance in produce, bagging, &c., payable in one to five years. It shows conclusively that R.'s witnesses are mistaken in their estimate of the then value, or at least of its vendible value. But whether so mistaken or not, it neutralizes the effect of all such testimony, by showing the price R. was willing to take, and had for months been endeavoring to obtain. If he were willing and anxious to make an unconditional sale at $5,000, it is easy to understand his willingness to make a conditional one at the price paid by S. Taken in connection with the other strong facts and circumstances, it overthrows and outweighs the testimony of Wood and Johnston, even if the latter were unambiguous. Dr. Johnston is not more intelligent or respectable than Hancock. The recollections of one respectable witness, and another of doubtful character, would never be allowed to disturb a twenty years possession, and contradict a solemn written agreement, corroborated, as it is, by so many and such strong facts and circumstances.

The vast importance of this testimony affords most satisfactory reason for believing that it was wholly unknown to S. before the original decree, even if the accidental manner in which it recently came to his knowledge, were not satisfactorily explained, as it is, by Hancock.

2. Does this testimony alone afford sufficient ground for opening and setting aside the decree?

It presents a new fact, not directly put in issue, or attempted to be proved, yet, if known, might have been proved under the issue. It is not mere cumulative proof upon a point before in contest, but a new fact, which, in aid of the old facts, conclusively proves a sale, the main matter in issue.

Can parol proof be used for this purpose?

In applying the authorities about to be cited, let it be remembered that this parol proof is offered, not to disturb, but to quiet long possession; not to impair, but confirm a written title; not to oppose full satisfactory proof, but to contradict the weakest of all proof — parol proof of confessions, and that, too, resting on the doubtful meaning of one witness and the doubtful veracity of another, which has been allowed to rewrite a written contract and contradict a possession of twenty years. It is the

mere opposing of new parol to the old parol proof.    It also aids to fix the otherwise doubtful construction of a muniment of title or cotemporaneous, written document.    When the authorities are thus scanned, it will be found that we are more than sustained, and that our right to the review upon the single testimony of Hancock alone, is clearly made out.

The recognized right to review a decree upon newly discovered testimony, is coeval with the court of chancery.

The ordinance of Lord Bacon, made to define the right and regulate its exercise, says : — " No bill of review shall be admitted on any new proof which might have been used, when the decree was made.,  Nevertheless, upon new proof that has come to light after decree made, which could not possibly have been used at the time when decree passed, a bill of review may be grounded."

. This ordinance was explained or construed, (2 Freem. 31,) thus : " When a matter of fact was particularly in issue before the former hearing, though you have new proof of that matter, upon that you shall never have a bill of review.  But where a new fact is alleged, that was not at the former hearing, there it may be ground for a bill of review."

The ordinance, as construed in 2 Freeman, was recognized and adopted at an early day in Kentucky. , Respass v. McClanahan, Hard. 346.    The adoption is accompanied with the following pertinent remarks : " There is an important difference between discovery of a matter of fact, which, though it existed at former hearing, was not then known to the party, or which was not alleged or put in issue by either party ; and the discovery of new witnesses or proof of a matter or fact which was then known or in issue.    In the former case, the party not knowing the fact, and it not being particularly in issue, there was nothing to put him on the search, either of the fact or the evidence of the fact; and therefore the presumption is in his favor, that as the matter made for him, his failure to show the matter was not owing to his negligence or fault."

The cases in which this right of review has been acted on or recognized in England and this country are too numerous for citation.

Judge Story's Eq. Jur. 326–7, thus gives the rule : " The new matter must be relevant and material, and such, as if known, might probably have produced a different determination.    But it must be such as the party, by the use of reasonable diligence, could not have known, for laches or negligence destroys the title to relief."

In Daniel's Ch. 1734, the rule is given thus : " The matter must not only be new, but material, and such as would clearly

entitle plaintiff to a decree, or would raise a question of so much nicety and difficulty, as to be a fit subject of judgment in the cause." Ord v. Noel, 6 Madd. 127; Blake v. Foster, 2 Mos. 257.

In Kennedy v. Ball, Litt. Sel. Cas. 127, it was held that " When a review is asked on account of discovery of a fact not put in issue, it should not be granted, unless that fact, when combined with the other proof in the cause, would produce a change in the decree."

In Talbott v. Todd, 5 Dana, 194, it is held to be one of the grounds for review, " where new matter has been discovered, though it lies in parol, if not put in issue or determined by the court."

No case has been found which says parol proof is not admissible to prove the new matter allowed by the rule. The absence of any such expressed exception in the ordinance and its commentaries, demonstrate that such exception is no part of the rule. The cases and *dicta* in Kentucky and elsewhere which say, that when the matter was before particularly in issue or contested, the new proof must be of an unerring character, as record or writing, need not be noticed, for they have no application. They are, in truth, a relaxation of the first member of the rule, as given in the ordinance, and in 2 Freeman, taken restrictedly, and have no bearing on the second or latter branch of the rule.

It however may not be amiss to refer to Wood v. Mann, 2 Sumn. 332, where Judge Story, after a careful review of authorities, as to the admissibility of cumulative parol proof, upon a matter before in issue, says : " Upon bills of review, for newly discovered evidence, parol evidence to facts is not necessarily prohibited by any general practice or rule of law." Again, at p. 334, he thus gives the result of his examination of the authorities and of his own consideration of the subject : " That there is no universal or absolute rule which prohibits the court from allowing the introduction of newly discovered evidence of witnesses to facts in issue in the cause, after the hearing. But the allowance is not a matter of right in the party, but of sound discretion in the court, to be exercised sparingly and cautiously, and only under circumstances which demonstrate it to be indispensable to the merits and justice of the cause."

In Ocean Insurance Company v. Fields, 2 Story, Rep. 59, the same learned judge decided : " Although a court of equity will not ordinarily grant relief, in cases after verdict, where mere cumulative evidence of fraud, or of any other fact is discovered ; yet it will, where the defence was imperfectly made out, from the want of distinct proof, which is afterward discovered, although there were circumstances of suspicion."

He says : " I do not know that it ever has been decided, that when the defence has been imperfectly made out at the trial, from the defect of real and substantial proofs, although there were some circumstances of a doubtful character, some presumptions of a loose indefinite bearing before the jury, and afterward newly discovered evidence has come out, full, direct, and positive, to the very gist of the controversy, a court of equity will not interfere and grant relief and sustain a bill to bring forth and try the force and validity of the new evidence. The disposition of the courts is not to encourage new litigation in cases of this sort; but, at the same time, not to assert their own incompetency to grant relief, if a very strong case can be made *a fortiori;* all reasoning upon such a point must be powerfully increased in strength, where it is applied to a case which is composed and concocted of the darkest ingredients of fraud, if not of crime."

As it appears from these two decisions, that there is no general rule to exclude mere cumulative parol proof in all cases, there can be no doubt of its admissibility in a case like this, where it is offered to establish a most material fact, not before contested or " specially in issue." The attention of the court is particularly invited to Ocean Insurance Company *v.* Fields, with another view. Should the court, contrary to expectation, feel unwilling, from any technical reason, to set aside the decree under the charge of fraud, then that case is full authority for allowing Hancock's testimony, if for no other reason, because it would then afford the only available means of frustrating the iniquity perpetrated through Wood's bribed testimony, this case being also " composed and concocted of the darkest ingredients of fraud and crime."

All the authorities concur, that the rule for granting a review (or awarding new trial out of chancery) is substantially the same as that for granting a new trial at law, upon the ground of newly discovered testimony. In Talbott *v.* Todd, 5 Dana, 196, it was held, " that the powers which a court of common law may exercise during the term in granting a new trial upon the discovery of new matter, may be exercised by a court of chancery after the term."

In Langford's Adm. *v.* Collier, 1 A. K. Mar. 237, a bill for a new trial at law was sustained upon discovery, since the term, of parol proof of confessions by Collier, he having obtained the verdict upon such proof of confessions by Langford. Held, opinion by Ch. J. Boyle, that, " in general when proper for courts of law to grant a new trial during the term, it is equally proper for chancery to grant new trial on same grounds arising after the term."

47

The distinction made in both courts, is between merely cumulative evidence to a point before in contest, and proof of a new matter or' fact not before contested, but bearing materially on the original issue. The distinction is well expounded in Waller *v.* Graves, 20 Conn. 305: " If new evidence is merely cumulative, no new trial, unless effect be to render clear what was equivocal or uncertain. By cumulative evidence is meant additional evidence .of same . general character, to some fact or point, which was subject of proof before. Evidence of distinct and independent facts of different character, though it may tend to establish some ground of defence or relate to some issue, is not cumulative within the rule."

So also in Chatfield *v.* Lathrop, 6 Pick. 417, " Cumulative evidence is such as tends to support the same fact, which was before attempted to be proved." Barker *v.* French, 18 Vt. 460, new trial granted for newly discovered cumulative evidence, because it made a doubtful case clear.

Gardner *v.* Mitchell, 6 Pick. 114. Action for breach of warranty in the sale of oil, testimony by both parties, as to quality. Motion for new trial, on ground of evidence newly discovered, of admission by plaintiff, that oil was of proper quality. This held to be a new fact, not cumulative, and the evidence being nearly balanced, a new trial was granted.

If Daniel *v.* Daniel, 2 Litt. 52, be cited on the other side, it will be found, on examination, to be either a felo-de-se, or inaccurate in the statement of the turning point, or erroneous for not attending to the distinction as to what is and what is not cumulative proof, so accurately defined in Waller *v.* Graves, (20 Conn.) and so distinctly recognized by Respass *v.* McClanahan, (Hard.) and numerous other cases. Daniel *v.* Daniel, itself distinctly recognizes, as one of the grounds for awarding new trial at law out of chancery — " the discovery of new evidence, relevant to a point not put in issue, for want of proof to sustain it." The true meaning of " putting in issue," was either mistaken by the court, or the true ground of decision is misstated.

In Talbot *v.* Todd, (5 Dana, 197,) it was decided that a party who seeks to open a decree upon discovery of new matter, is not held to very strict proof, either as to his former ignorance or as to his industry in making inquiries which might have led to the discovery. In Young *v.* Keighly, 16 Ves. 350, it was said by Lord Eldon, that, though the fact were known before decree, yet, if the evidence to prove it were only discovered afterward, " though some contradiction appears in the cases, there is no authority that the new evidence would not be sufficient ground for review."

Southard et al. *v.* Russell.

We have no need for either of these cases. They are merely cited to prevent any possible doubt on that score. The vast importance of Hancock's testimony is the most satisfactory evidence that Southard could not have been apprised of it, or it would most certainly have been used by him. Even if he had suspected the fact, he could not have found the proof but by inter-rogating every man who he supposed had been in Louisville and its vicinity at the time of the sale. Indeed, when the suit was brought, if not during its whole pendency, Hancock resided in another county.

We have thus, by what is supposed to be an overabundant array of authority, established the right to use Hancock's testimony in any aspect of the case that can possibly be taken. We cannot doubt the disposition of the court to go as far that way as legal authority will allow, for the attainment of justice in a case like this. We have already proved the effect of his testimony is to clearly show Southard's right to a decree.

2. The second point of Mr. Nicholas's argument was to show that the former decree would not have been rendered unless the court had faith in Wood's testimony; and that as Wood was now shown, by new evidence, to have been bribed, his testimony was destroyed, and consequently the foundation of the decree was swept away.

Mr. Nicholas inferred the bribery of Dr. Wood for the following reasons, which must be merely stated, without the deductions from them.

1. That Stewart's note to Wood bore date on the very day when the deposition was taken.

2. That no proof whatever was brought of the alleged consideration of the note, namely, Wood's former medical services to Russell's slaves, and money loaned to Wing. On the contrary, that the allegation was disproved by the non-production of the account which was said to be certified by Wing; by Wood's never having sued on the demand, or made a claim when he knew of the sale of the farm and removal of the stock and negroes; by the extraordinary conduct of Russell in thus promptly assuming a debt which was barred by the statute of limitations; by Wood's former evidence when he said that he knew from Russell himself that Wing was his agent, and had contracted debts for him, whereas if this debt had existed he would have said so.

(Mr. Nicholas then proceeded in this branch of his argument, as follows:)

But it is contended, that the decree ought not to be set aside for this fraud, because the only effect of establishing the fraud is to impeach the bribed witness, and that the rule is,—you can

never open a decree to impeach a witness. For this they rely on Respass *v.* McClanahan, Hardin, 346.

It is sufficient answer to this objection, that it is not the witness alone, or principally, whom we impeach, but Russell and Stewart, whom we impeach for fraud in obtaining the decree, by means of the bribed witness. No rule of law or policy is violated in permitting us to do this, merely because the witness also is incidentally but necessarily assailed. If such were the rule, this case is all-sufficient to prove that the rule is based neither on justice nor policy, and ought therefore to be wholly disregarded, or so restricted, as not to apply to a case like this. But such is not the rule. Neither is this case of Respass *v.* McClanahan an authority to prove it, or if it be, then the case cannot be relied on, because it is sustained by no authority. The case contains merely a *dictum* that the conviction of perjury of the witness, on whose testimony the verdict was rendered, is one of the exceptions to the general rule, that the chancellor will not award a new trial to let in new witnesses to a contested point. The case does not say, nor has any authority ever said, that the testimony of a witness can in no way be so assailed, unless you first convict him of perjury; for instance, where the perjury was made with the knowledge or at the solicitation of the plaintiff, much less where it was procured by him through bribery. Still less does Respass *v.* McClanahan or any other authority say, that either at law or by bill of review you cannot have a new trial, or a decree opened, by showing with newly discovered testimony, either the incompetency of the witness, or by new matter so contradicting him as to prove his perjury. Bribery goes to his competency as well as credibility. It may not be one of the established exceptions which, like interest, will exclude the witness altogether from the jury, because the jury is the more appropriate tribunal for determining the question of bribery, and is in no danger of improper influence from the testimony of a bribed witness. But what judge would hesitate in instructing the jury, that if they believed the bribery they ought to disregard his testimony? Neither would a chancellor hesitate, if it were necessary to justice so to act in sustaining an exception to the deposition of a bribed witness, and ruling it out of the cause. It would be singular, indeed, if interest to the amount of a dollar should render a witness incompetent, while a bribe to the amount of hundreds would have no such effect. Many witnesses, if they could be heard, would be believed by court and jury, though interested to the amount of thousands; but neither would regard the testimony of a witness who had received a bribe to the amount of only five dollars. If, therefore, there be any technical rule which limits incompetency to

the interested, and will not include the bribed witness, yet every principle of justice and sound policy requires that they should be considered as, at least, on the same footing, in fixing the rule as to what should be considered ground for a new trial, or in setting aside a decree for fraud. The law goes upon the broad general principle, that litigants must sustain their cases by disinterested testimony, and if an interested witness is palmed upon the court, it is treated as a fraud, for which the verdict will be set aside. A bribed witness is an interested witness; his own self-interest is used, not only to give him directly an undue bias, but he infamously sells a falsehood and commits wilful perjury for a reward. The true character of witnesses *quoad* this subject, must, therefore, stand on the same footing; or, rather, that is the most favorable view that can be taken for Russell.

In Talbott *v.* Todd, 5 Dana, 196, the court properly says: " the same power which a court of law may exercise during the term in granting a new trial for the discovery of new matter may be exercised by the chancellor after the term." All the authorities concur, that the powers of the chancellor to award a new trial and sustain a bill of review are identical.

In McFarland *v.* Clark, 9 Dana, 136, where a witness denied a receipt given by her, the court ordered a new trial on the ground of surprise, though the effect of the new testimony was to impeach the witness. This, too, though, as Ch. J. Robertson says, in delivering the opinion of the court: " It has often been decided, that a new trial should not be awarded merely on the ground of discovery of testimony to impeach a witness. But surprise is altogether a different ground for a new trial. It does not, like discovery, imply negligence. That the new testimony may impeach a witness, is not material." Cannot we here equally rely upon this ground of surprise? The bribery was a fact locked up in the knowledge of Stewart and the witness. No amount of vigilance or diligence would have enabled Southard to prove the fact, until it accidentally leaked out, in consequence of Wood's necessities having driven him to try to sell the note. Or can we not with much better reason contend that bribery is " altogether a different ground," and a much more satisfactory one for a new hearing; and, therefore, the fact that the witness is also impeached, " is not material." For no degree of negligence whatever can be imputed to Southard, whereas it was incautious to trust the proving of the receipt to the witness of the other party. See also Millar *v.* Field, 3 A. K. Mar. 109, a strong case to same effect.

Allen *v.* Young, 6 Mon. 136, opinion by Ch. J. Bibb: a new trial was awarded, because of the infamous character of the

witness, as disclosed in his own testimony. Though the court conceded that to determine the credibility of a witness was the peculiar province of the jury, yet it said : " It is due to the pure administration of justice, to example and effect in society, that a verdict, based exclusively upon the testimony of confession, sworn to by an infamous witness, should not stand."

Thurmond v. Durham, 3 Yerger, 106 : new trial will be ordered in chancery, where the verdict was obtained by accident, or by the fraud or misconduct of the opposite party, without any negligence in the other.

Peterson v. Barry, 4 Binney, 481 : new trial ordered, because of surprise in proof of payment by two witnesses strongly suspected of having been tampered with.

Fabrilius v. Cock, 3 Burr. 1771 : new trial ordered, on afterdiscovered testimony, to show the demand fictitious and supported by perjury procured by subornation.

Niles v. Brackett, 15 Mass. 378 : new trial ordered, where interest of witness was known to party producing him, and not to the other party.

Chatfield v. Lathrop, 6 Pick. 418 : new trial ordered, where witness, on his voir dire, denied interest, and it was afterward discovered that he had an interest. See, also, Durant v. Ashmore, 2 Richm. 184, and 2 Bay, 520.

George v. Pierce, 7 Modern, 31 : new trial refused at law on affidavit that material witness had said he had received a guinea to stifle the truth, sed per uniam; "his affidavit who got the guinea would be something, but his saying so is nothing."

Ocean Insurance Company v. Field, 2 Story, 59 : the bill was sustained for new trial upon the discovery of testimony that the vessel had been fraudulently sunk, though the effect of the new testimony was necessarily to impeach the witnesses, who had proved on the trial a bonâ fide loss.

The case of Tilly v. Wharton, 2 Vernon, 378, 419, is the only one in which the point was ever directly made and decided, whether a conviction of perjury or forgery was necessary, before the chancellor would award a new trial or set aside a decree on the ground of newly discovered testimony, as to the perjury or forgery; and there it was ultimately decided that such conviction was not necessary. That case was thus: Verdict and judgment on bond and bill to subject real assets. Defendant insisted bond was forged, and made strong proof. That, however being the point tried at law, the court would not enter on the proof thereof, saying, if the witnesses had been convicted of perjury, or the party of forgery that might have been a ground of relief in equity, especially since the proceeding by attaint had

become in a manner impracticable. But upon appeal to the House of Lords, a new trial was directed, and the bond found to be forged. Though the report does not say so, yet the presumption is that, according to uniform usage, the decision of the lords was given upon the advice of the twelve judges. The case was one of cumulative proof merely upon the points of perjury and forgery, which were the very points contested in the trial before the jury; yet, even in that kind of case, the chancellor said, a conviction of perjury or forgery would have entitled the party to a new trial, and it was awarded by the lords, even without such conviction. But even the chancellor gives no intimation that, if the proof offered had been new matter, and the perjury and forgery had not been contested before the jury, that then a conviction would have been necessary to let in the proof. The more modern decisions show that he would have been wrong, if he had so decided; similar proof has frequently been let in, without any previous conviction. In *Coddrington v. Webb*, 2 Vernon, 240, a new trial was awarded by the chancellor upon the ground of surprise, and upon the charge that the bond was forged, without any allegation of conviction for perjury or forgery. And in *Attorney-General v. Turner*, Ambl. 587, after there had been two verdicts and a decree establishing a will, Lord Hardwicke awarded a new trial on the discovery of a letter written by a witness who proved the will, to one of the trustees, requesting not to be summoned as a witness, because he knew the testator was insane. The new trial resulting in a verdict in favor of the heir at law, the former verdict and decree were set aside, and possession of the estate ordered to be delivered to the heir at law. This, too, without a suggestion even as to the necessity of a conviction of perjury against the witness.

In this case, though the general character of Peter Wood for veracity, was in contest in the original suit, yet the fact of the bribery was in no way brought in issue. We have, therefore, a right to use it as original matter newly discovered, to impeach his testimony as greatly within the principle decided in *Tilly v. Wharton*, 2 Vernon, or as a substantive ground of fraud against Russell in obtaining the decree.

(The remainder of Mr. Nicholas's argument on this head, is omitted for want of room.)

The argument of the counsel for the appellee, so far as it related to the points decided by the court, was as follows:

In arguing the case, we will first briefly consider the law which must govern the decision of it. As Southard's Bill of Review does not question the correctness of the opinion of this court on the original record, but relies altogether on an alleged discovery

of evidence since the date of the first decree in the Circuit Court — an inquiry into the correctness of the decision sought to be reviewed would be superfluous and impertinent.

Though a decree may be set aside for fraud in obtaining it, the proper proceeding in such a case is, not by a bill of review, but by an original bill in the nature of a bill of review.

A bill of review and a bill for a new trial of an action depend on the same principles, and are governed by analogous rules of practice; and neither of them, as we insist, can be maintained on the extraneous ground of a discovery of new testimony, unless the complaining party had been vigilant in the preparation of the original suit, and could not, by proper diligence, have made the discovery in time to make it available on the trial — nor unless the discovered testimony will prove a fact which, had it been proved before or on the hearing of the original case, would have produced an essentially different judgment or decree — nor unless the new evidence be either documentary, or, if oral, shall establish a fact not before in issue for want of knowledge of the existence of the fact or of the proof of it. This is the long and well-settled doctrine in Kentucky. See Respass, &c. v. McClanahan, Hard. 347; Eccles v. Shackleford, 1 Litt. 35; Yancey v. Downer, 5 Ib. 10; Findley v. Nancy, 3 Mon. 403; Hendrix's Heirs v. Clay, 2 A. K. Marsh. 465; Respass, &c. v. McClanahan, Ib. 379; Daniel v. Daniel, 2 J. J. Marsh. 52; Hunt v. Boyier, 1 Ib. 487; Brewer v. Bowman, 3 Ib. 493; Ewing v. Price, Ib. 522. This doctrine is as rational everywhere as it is authoritative in Kentucky; and we think that it is generally recognized and maintained wherever the equitable jurisprudence of England prevails. It is coexistent with the ordinances of Chancellor Bacon, of which that one applying to bills of review on extraneous ground has been, from the year of its promulgation, interpreted as requiring either new matter not before litigated, or record or written evidence decisive of a fact involved in the former issue, and of the existence of which memorial the complaining party was, without his own fault or negligence, ignorant, until it was too late to use it to prevent the decree sought to be reviewed. See Hinde's Practice, 58; Gilbert's For. Rom. 186; Story's Eq. Pl. 433–4, n. 3; Taylor v. Sharp, 3 P. Wms. 371; Norris v. Le Neve, 3 Atk. 33–4, 2 Mad. Ch. 537; Patridge v. Usborne, 5 Russ. 195; Wiser v. Blachly, 2 Johns. Ch. Rep. 491; Livingston v. Hubbs, 3 Ib. 126.

Discovery of additional witnesses, or of cumulative or explanatory evidence, " by the swearing of witnesses," has never been adjudged a sufficient ground for a bill of review, or for a new trial of an action. The rule applied by most of the foregoing authorities, and virtually recognized in all of them, is dictated

by obvious considerations of policy, security, and justice. A relaxation of it so as to allow a new trial or review, on the alleged discovery of corroborative or explanatory testimony by witnesses, would open the door to fraud, subornation, and perjury, and would not only encourage negligence, but would lead to vexatious uncertainty and delay in litigation.

As to the discovery of new "matter," or of written evidence, the law is also prudently stringent in requiring that such matter or evidence shall clearly make the case conclusive in favor of the party seeking to use it; and, moreover, that the court shall be well satisfied that the non-discovery of it opportunely was not the result of a neglect of proper inquiry or reasonable diligence. Young *v.* Keighly, 16 Ves. 352; 2 & 3 Johns. *supra;* Findly *v.* Nancy, *supra*, and some of the other cases cited.

Nor will a review or a new trial be granted for the purpose of impeaching a witness. Barret *v.* Belshe, 4 Bibb, 349; Bunn *v.* Hoyt, 3 Johns. 255; Duryee *v.* Dennison, 5 Ib. 250; Huish *v.* Sheldon, Sayre, 27; Ford *v.* Tilly, 2 Salk. 653; Turner *v.* Pearte, 1 Term Rep. 717; White *v.* Fussell, 1 Ves. & Beames, 151.

We respectfully submit the question, whether the principles recognized and the rules established by the foregoing citations, and many other concurrent authorities, do not clearly and conclusively sustain the decree dismissing Southard's bill of review, and which he now seeks to reverse? We suggest, *in limine*, that the bill should not be construed as intending to impeach the original decree as having been obtained by fraud. The only distinct allegation in it on that subject is, that Stewart (one of Russell's attorneys) fraudulently bribed Dr. Wood to give his deposition. There is no allegation that Wood's testimony was false, or that, without his testimony, Russell would not have succeeded in this court. Nor does the bill anywhere intimate what portion of Wood's evidence was false, or in what respect. And, could the bill be understood as sufficiently impeaching the decree for fraud in obtaining it, an original bill, and not a bill of review, was the proper remedy. If, therefore, it be Southard's purpose both to impeach the decree for fraud, and also, on the discovery of new testimony, to open it for review, we submit the question whether those incongruous objects can be united availably in a bill of review.

But we cannot admit that either the allegation of false swearing or of the perjury of a witness is ground for a bill impeaching a judgment or decree for fraud; nor have we seen a case in which it was ever adjudged that the subornation of false testimony by the successful party was such fraud in the judgment or decree as would lay the foundation for an original bill for setting it aside. Although it might be gravely questioned on

principle, yet it has been said that, while a bill of review or for a new trial will not be maintained on an allegation that the decree or judgment was obtained by the false swearing of a material witness, yet a subsequent conviction of the witness for the imputed perjury may be ground for a review or new trial. But whenever alleged perjury is the ground for relief, legal conviction and conclusive proof of it by the record are, at the same time, required as indispensable. And this is dictated by the same policy which forbids new trials or reviews for impeaching witnesses by other witnesses. Respass *v.* McClanahan, and Brewer *v.* Bowman, *suprà*. Whilst, therefore, we doubt whether, on well-established principle or policy, even a conviction of perjury is, *per se*, sufficient cause for a new trial or review, we cannot doubt that imputed perjury, without conviction, is not sufficient in any case.

Simply obtaining a decree on a groundless claim and on false allegations, and even false proof, by a party knowing that his claim is unjust, and that his allegation and proof are untrue, has never been adjudged to be a fraud on the other party, for which he could be relieved from the decree by a bill of review, or an original bill impeaching it for fraud. Bell *v.* Rucker, 4 B. Mon. 452; Brunk *v.* Means, 11 Ib. 219.

If procuring a decree by false allegations, known by the party making them to be untrue, and also by availing himself of false testimony, knowing that it was not true, be not, in judgment of law, such a fraud on the other party as to subject the decree to nullification or even review, why should the fact that the same party, who knowingly alleged the falsehood, induced the false witness to prove it, make a case of remediable fraud ?

But if, in all this, we are mistaken, we insist, as already suggested, that there is, in this case, neither proof nor allegation that Dr. Wood's testimony was either totally or partially false; although Southard, as proved by the depositions of Jos. C. Baird, and of R. F. Baird, and of E. Clark, and of Deering, and of W. J. Clark, made elaborate and sinister efforts to seduce Wood, and fraudulently extract from him something inconsistent with the truth of his deposition, his failure was so signal as to reflect corroborative credit on Wood's testimony. In the original case, Southard made a desperate effort to impeach Wood's testimony. In that he failed. This court, in its opinion, said that he should be deemed credible, and moreover said that his statements were intrinsically probable, and were also corroborated by other facts in the record. The assault now made upon him, and on the attorney of Russell, is but a renewed effort to impeach testimony that was accredited, and considered by this court in its original decision.

Southard et al. *v.* Russell.

Could this forlorn hope succeed, the only effect of the success would be to deprive Russell of Wood's testimony. The setting aside of the decree would not follow as a necessary or even a probable consequence. If there be enough still remaining to sustain that decree, it will stand. And that there would be enough, we feel perfectly satisfied. The gross inadequacy of consideration — the defeasance and its accompanying circumstances — the peculiar and extraordinary means employed to disguise the true character of the contract — the condition and objects of Russell — the character, business and conduct of the Southards — the allegations, evasions, inconsistencies, and falsehoods of the answer of D. R. Southard — Johnson's testimony, proving, as this court said, a mortgage, — these and other considerations, independently of Wood's testimony, are amply sufficient to sustain the former opinion of this court, as shown by that opinion itself, and by abundant citations of recognized principles and adjudged cases in our former brief.

Then the allegations as to Wood and Stewart, had they even been sufficiently explicit to impute subornation and perjury, and had they been also proved, would not have amounted to vitiating and available fraud in obtaining the original decree, which could not be annulled or changed on that ground by an original bill impeaching it for fraud. This matter consequently is, in effect, only an impeachment of the credibility of a witness; and which, had it been possible, would have been ostensibly effected by the swearing, and perhaps perjury, of other witnesses, and by corruption and foul combination. But, though means extraordinary and discreditable have been employed to destroy Wood's credibility, the only circumstance which could, in any degree, tend to throw the slightest shade on the truth of his testimony is the fact that, about the time he gave his deposition, Mr. Stewart executed his note to him for $280. Is it proved, or can this court judicially presume that the consideration was corrupt? or can the court presume that Wood was bribed by that note to fabricate false testimony? Would not this be not only uncharitable, but unreasonable and unjust, in the absence even of any explanatory circumstance? But Russell, in answering the charge of bribery, peremptorily denies its truth, and affirms that his manager (Winn) had, among other liabilities incurred by him in managing the farm, presented him with an account due Dr. Wood for medical services, and also for a small sum loaned to him by Wood' that, never having been able to pay that debt, he directed Stewart to adjust it by note before he should require Wood to testify to the facts which he had learned that he could prove by him; and also to adjust a demand which Dr. Smith held against him for a larger amount;

and that Stewart accordingly executed the note for $280 to Wood, but did not settle Smith's debt, because that was in litigation. Now Southard having made Russell a witness, and there being no inconsistency or improbability in his response, it should not be gratuitously assumed to be false. It is moreover not only uncontradicted, but intrinsically probable. The medical account for $126, with legal interest for about twenty-one years, would, together with less than $10 loaned, amount, at the date of the note, to $280. Dr. Smith proves that Stewart did speak to him about settling his debt. This is corroborative of the answer. And though Smith did not know that Wood had rendered professional services to Russell's numerous slaves while under Winn's charge, he himself having been generally their regular physician, yet it is quite probable, nevertheless, that he did, as Winn informed Russell, and as the latter seems to have believed and acknowledged. But, as before suggested, if Russell owed Wood nothing, Stewart's note to him, even if given to induce him to testify, would not prove that he testified falsely or in what respect. It has been not very unusual, as in the Gardiner case, to pay witnesses a bonus for subjecting themselves to the inconvenience and responsibility of proving the truth. In its worst aspect, the utmost effect of this matter would be to impair Wood's credibility, which cannot be done by a bill of review.

Our view of this matter, therefore, is: 1. That an original bill could not set aside the decree for the alleged subornation of a witness. 2. That the same cause would be insufficient to maintain a bill of review, unless the witness had been convicted of perjury, and that it may be doubted whether even conviction would make a sufficient cause. 3. That the bill in this case does not allege that Dr. Wood's testimony was false, nor intimate in what respect; and that, therefore, on this point it is radically defective and wholly insufficient. 4. That there is no proof that his testimony was untrue in any particular, but that, on the contrary, its perfect purity and truth, in every essential matter, are strongly fortified by the constancy and emphasis with which, drunk or sober, in defiance of corrupt combinations and strong temptations to seduce him into renunciation of some portion of it, or into some purchased or inadvertent declaration or admission inconsistent with it, he has adhered to and reiterated the truth of it at all times and under all circumstances. 5. That, without Wood's testimony, the decree was proper, and would have been just what it is. 6. That the object of the bill of review is to impeach Wood's credibility, which cannot now be allowed, and if allowable, has been entirely frustrated, and would be unavailing to Southard had he succeeded in his purpose.

" The credit of witnesses is not to be impeached after hearing and decree. Such applications for an examination to the credit of a witness are always regarded with great jealousy, and they are to be made before the hearing." White *v.* Fussell, 1 V. & B. 151. " There would be no end of suits if the indulgence asked for in this case were permitted." Livingston *v.* Hubbs, 3 Johnson's Ch. Rep. 126.

The alleged discovery of Hancock's testimony, and of Oldham's as to Talbot's Alabama property, and of a mistake, either by this court or by the witness himself, as to Dr. Johnson's testimony, are all plainly insufficient. These three distinct allegations are all in the same category. Each alike depends on the question whether a discovery, after decree, of new witnesses concerning a matter previously litigated and adjudged between the same parties, is good ground for a bill of review; for what was the value of the land conveyed by Russell to Southard, and whether this conveyance was a conditional sale or mortgage, were the principal questions involved in the original suit, and the testimony of Hancock and Oldham applies only to the first, and that of Johnson is merely explanatory of his former deposition as to the last of these litigated matters. The foregoing citations conclusively show that no such cumulative evidence by witnesses is sufficient for upholding a bill of review. " No witnesses which were or might have been examined to any thing in issue on the original cause, shall be examined to any matter on the bill of review, unless it be to some matter happening subsequent, which was not before in issue, or upon matter of record or writing, not known before. Where matter of fact was particularly in issue before the former hearing, though you have new proof of that matter, upon that you shall never have a bill of review." Hinde's Prac. 50; 2 Freeman, 31; 1 Harrison's Ch. 141. " This court, after the most careful research, cannot find one case reported in which a bill of review has been allowed on the discovery of new witnesses to prove a fact which had before been in issue; although there are many where bills of review have been sustained on the discovery of records and other writings relating to the title which was generally put in issue. The distinction is very material. Written evidence cannot be easily corrupted; and if it had been discovered before the former hearing, the presumption is strong that it would have been produced to prevent further litigation and expense. New witnesses, it is granted, may also be discovered without subornation, but they may easily be procured by it, and the danger of admitting them renders it highly impolitic." " If, then, whenever a new witness or witnesses can, honestly or by subornation, be found whose testimony may probably change a decree in chancery or

an award, a bill of review is received, when will there be an end of litigation? And particularly will it not render our contests for land almost literally endless? "What stability or certainty can there be in the tenure of property? The dangers and mischief to society are too great to be endured." Respass v. McClanahan, &c., Hardin, *supra.* " The rule is well settled, that, to sustain a bill for a review or new trial at law, the evidence, if it applies to points formerly in issue, must be of such a permanent nature and unerring character as to preponderate greatly or have a decisive influence upon the evidence which is to be overturned by it." Findley v. Nancy, *supra.* " The nature of newly discovered evidence must be different from that of the mere accumulation of witnesses to a litigated fact." Livington v. Hubbs, *supra.* Such is the familiar doctrine to be found in the books *sparsim,* and without authoritative deviation or question since the days of Chancellor Bacon. It concludes the case as to the discoveries we are now considering. Besides they, when scrutinized, amount to nothing which, if admitted, could affect the decree.

Hancock's memory is indistinct and uncertain — see his affidavit and his two depositions — all vague and materially varying as to facts and dates. Moreover, he was not in Kentucky between the 1st of July, 1827, and the date of the conveyance from Russell to Southard. The same depositions prove that Russell was not in Kentucky during that year, until after the 8th of July. Consequently, if Russell made an offer to sell to Hancock, it was since, and probably more than a year since he conveyed to Southard; and, therefore, if he ever proposed such sale it was of the equity of redemption, which was in fact worth more than $5,000.

Mr. Justice NELSON delivered the opinion of the court.

This is an appeal from a decree of the Circuit Court of the United States for the District of Kentucky.

The present defendant, Russell, filed a bill in the court below in 1847, against the present complainant, Southard, and others, for the purpose of having the deed of a large and valuable farm or plantation, and a defeasance on refunding the purchase-money executed at the same time, declared to be a mortgage; and, that the complainant be permitted to redeem on such terms and conditions as the court might direct. The cause went to a hearing on the pleadings and proofs, and a decree was entered May term, 1849, dismissing the bill. Whereupon the complainant appealed to this court, and, after argument, the decree of the court below was reversed, the court holding the deed and defeasance to be a mortgage; and, that

the complainant had a right to redeem, remanding the cause to the court below, with directions to enter a decree for the complainant, and for further proceedings in conformity to the opinion of the court.    The case and opinion of this court will be found in 12 How. 139.

The main question litigated in the cause, both in the court below and in this, was whether or not the transaction, the decree and defeasance, was a conditional sale to become absolute on the failure to refund the purchase-money within the time, or a security for the loan of money.    The case was severely contested in the court below, some seventy witnesses having been examined, as appears from the original record; and was very fully argued by counsel, and considered by this court, as may be seen by a reference to the report of the case.

On the coming down of the mandate from this court to the court below, and the entry of a decree in conformity thereto, the defendants filed a bill of review, which having been entertained by the court, the cause went to a hearing on the pleadings and proofs ; and after argument the court dismissed the bill.  The case is now before us on an appeal from that decree.    Between forty and fifty witnesses have been examined upon the issues in this bill of review; but we do not deem it material to go into the evidence, except as it respects one or two particulars, which are mainly relied on as ground for interfering with the former decree.    The learned counsel for the appellant, in a very able argument laid before us, frankly and properly admits that, so far as it regards the newly discovered evidence produced, the case rests mainly upon the alleged bribery of one of the material witnesses for the complainant in the original suit, Dr. Wood; and upon the evidence of Hancock, who had not before been a witness.    It is claimed that this evidence is of such a nature and character, when taken in connection with the original case, as to be controlling and decisive of the original suit in favor of the defendants; and that it is competent and admissible as newly discovered facts bearing upon the main issue in that case, within the established doctrine concerning proceedings in bills of review.

It is important, therefore, to ascertain with some exactness the character and effect of this evidence when taken alone ; and, also, when viewed in connection with the evidence in the former case.

The bill of review charges, upon information and belief, that Stewart (who was one of the solicitors for the complainant in the original bill) obtained by means of bribery the testimony of Dr. Wood, a material witness in the cause, and upon the faith of whose evidence this court was induced to render its decision

on the appeal; that said Stewart gave to the witness his note for the sum of two hundred and eighty dollars; and, that this fact first came to the knowledge of the complainants since the decree.

The answer sets forth, that this note was given by Stewart under the following circumstances: The defendant, on his return to the State of Kentucky, in the fall of 1827, ascertained that his overseer, Wing, who was his agent in charge of the farm or plantation in question, had greatly involved him in debt, and among the list of creditors furnished by said overseer were Doctors Smith and Wood. That afterwards, when he brought his suit for the redemption of the mortgage, he left with the said Stewart a list of the names by whom he believed he could prove the facts necessary to sustain his bill; and among others were the names of Doctors Wood and Smith. That he was subsequently informed by Stewart that each of these two witnesses claimed a debt against him; and that Wood had exhibited an account certified by said Wing, his overseer, for medical services and borrowed money; and knowing that any account signed by Wing was correct, the defendant authorized his solicitor to execute a note for the same as his agent; and to do the same thing in respect to Dr. Smith, after ascertaining what was really and truly due to him.

That he was afterwards informed by said Stewart, he had executed a note to Doctor Wood to the amount of two hundred and eighty dollars, which included his account together with the interest. That said Stewart also informed him he would have given a similar obligation to Doctor Smith; but on reference to a record of a suit of said Smith against the defendant in Louisville chancery court, it appeared doubtful if any further sum was due to him. Thus the facts stand upon the pleadings.

The proofs in the case, as far as they go, sustain the answer. They consist altogether of admissions drawn from Wood by persons in the service of Southard, the complainant, employed with the express view of extorting them by the temptation of reward, and by the use of the most unscrupulous and unjustifiable means. A deliberate and corrupt conspiracy was formed, at the instance of Southard, for the purpose of obtaining from Wood an admission that this note was given as an inducement to a consideration for his testimony in the original suit; but in the several conversations detailed, and admissions thus insidiously procured, Wood persisted in the assertion that the note was given as a consideration principally for medical services rendered to the slaves of Russell on the plantation in question. If any doubt could exist as to the truth of the circumstances under which this note was given, as declared by Wood, his

consistency in the numerous conversations into which he was decoyed, unconsciously, by the conspirators, should remove it. If not founded in fact, the consistency is strange and unaccountable, considering the character of the persons employed to entrap him, and the unscrupulous and unprincipled appliances used to accomplish a different result, namely, the obtaining an admission that the note was given as the wages of his former testimony. He was surrounded by professed friends for this purpose, and intoxicating liquors freely used, the more readily to entrap him. An attempt has been made to invalidate this explanation by the testimony of Doctor Smith, who states, that he was the general physician of the plantation, and that, in his opinion, services to the amount claimed by Wood could not have been rendered at the time without his knowledge; but this negative testimony, whatever weight may properly be given to it, is not sufficient to overcome the answer, and, corroborating circumstances to which we have referred. It is matter of opinion and conjecture; and that, too, after the lapse of some twenty-five years. Wing, the overseer, who might have cleared up any doubt upon the question, is dead.

One line of proof and of argument, on the part of the complainant in the original suit, to show that the transaction was a mortgage and not a conditional sale, was the great inadequacy of price. A good deal of evidence was furnished on both sides upon this point. The item of newly discovered evidence, besides that already noticed, is the testimony of Hancock, who states that Russell, in a conversation with him in the forepart of the year 1827, as near as he could recollect, offered to sell to him the plantation for the sum of $5,000. This is claimed to be material, from its bearing upon the question of adequacy of price, Southard having paid nearly this amount.

Without expressing any opinion as to the influence this fact, if produced on the original hearing, might have had, it is sufficient to say, that it does not come within any rule of chancery proceedings as laying a foundation for, much less as evidence in support of, a bill of review.

The rule, as laid down by Chancellor Kent, (3 J. Ch. R. 124,) is, that newly discovered evidence, which goes to impeach the character of witnesses examined in the original suit, or the discovery of cumulative witnesses to a litigated fact, is not sufficient. It must be different, and of a very decided and controlling character. 3 J. J. Marsh. 492; 6 Madd. 127; Story's Eq. Pl. § 413.

The soundness of this rule is too apparent to require argument, for, if otherwise, there would scarcely be an end to litigation in chancery cases, and a temptation would be held out to

48 *

tamper with witnesses for the purpose of supplying defects of proof in the original cause.

A distinction has been taken where the newly discovered evidence is in writing, or matter of record. In such case, it is said, a review may be granted, notwithstanding the fact to which the evidence relates may have been in issue before; but otherwise, if the evidence rests in parol proof. 1 Dev. & Batt. 108, 110.

Applying these rules to the case before us, it is quite apparent that the decree below dismissing the bill was right, and should be upheld. The utmost effect that can be claimed for the newly discovered evidence is: 1. The impeachment of the testimony of Doctor Wood in the original suit; and, 2. A cumulative witness upon a collateral question in that suit, which was the inadequacy of the price paid; a fact, it is true, bearing upon the main issue in the former controversy, but somewhat remotely.

As it respects the first — the impeachment of Wood — the means disclosed in the record resorted to by the complainant, Southard, strongly exemplify the soundness of the rule that excludes this sort of evidence as a foundation for a bill of review, and the danger of relaxing it by any nice or refined exceptions. And, as to the second — the evidence of Hancock — it is excluded on the ground, not only that it is merely cumulative evidence, but relates to a collateral fact in the issue, not of itself, if admitted, by any means decisive or controlling. If newly discovered evidence of this character could lay a foundation for a bill of review, it is manifest that one might be obtained in most of the important and severely litigated cases in courts of chancery.

There is another question involved in this case, not noticed on the argument, but which we deem it proper not to overlook.

As already stated, the decree sought to be set aside by this bill of review in the court below was entered in pursuance of the mandate of this court, on an appeal in the original suit. It is therefore the decree of this court, and not that primarily entered by the court below, that is sought to be interfered with.

The better opinion is, that a bill of review will not lie at all for errors of law alleged on the face of the decree after the judgment of the appellate court. These may be corrected by a direct application to that court, which would amend, as matter of course, any error of the kind that might have occurred in entering the decree.

Nor will a bill of review lie in the case of newly-discovered evidence after the publication, or decree below, where a decision has taken place on an appeal, unless the right is reserved in the

decree of the appellate court, or permission be given on an application to that court directly for the purpose. This appears to be the practice of the Court of Chancery and House of Lords, in England, and we think it founded in principles essential to the proper administration of the law, and to a reasonable termination of litigation between parties in chancery suits. 1 Vern. 416; 2 Paige, 45; 1 McCord's Ch. R. 22, 29, 30; 3 J. J. Marsh. 492; 1 Hen. & Munf. 13; Mitford's Pl. 88; Cooper's Pl. 92; Story's Eq. Pl. § 408. Neither of these prerequisites to the filing of the bill before us have been observed.

We think the decree of the court below, dismissing the bill of review, was right, and ought to be affirmed.

## Order.

This cause came on to be heard on the transcript of the record from the Circuit Court of the United States for the District of Kentucky, and was argued by counsel. On consideration whereof it is now here ordered, adjudged, and decreed by this court, that the decree of the said Circuit Court in this cause be, and the same is hereby affirmed, with costs.