THOMAS W. OLIVER and WIFE, et al., plaintiffs in error, vs. JAMES G. STONE and WIFE, defendants in error.

Delivery is essential to a deed.

In equity, from Burke Superior Court. Decision by Judge HOLT, at November Term, 1857.

Thomas W. Oliver and Eliza Oliver, his wife, and Orren D. Lassiter and Mary Lassiter, his wife, filed this bill against James G. Stone and Eliza, his wife, formerly Mrs. Eliza Burke, for an account and partition of certain negro slaves alleged to be in defendants' possession, and which they charge belong to them and the said defendants, as tenants in common, under a certain deed of gift, executed by one Dennis Glisson, the father of Mrs. Stone and grand-father of Mrs. Oliver and Mrs. Lassiter.

The defendants answered the bill, and denied that they held said slaves as tenants in common with the complainants, but claim the same as their individual absolute property, and which were given to the defendant, Mrs. Stone, by her father, the said Dennis Glisson, upon or during her marriage with her former husband, ——— Burke. They further deny that said Dennis ever executed any such deed as that set out in complainants' bill; that said deed, if ever signed, was never delivered but the same remained in the

possession of said Dennis until after his death, when being found amongst his other papers, and supposed to be useless or of no validity, was torn up, but afterwards some of the fragments gathered up and pasted together; but some and those containing material parts, were lost and never replaced. And this paper thus mutilated, was afterwards, and after the death of said Dennis Glisson, recorded, and is the same paper mentioned in complainants' bill, and under which they claim an interest in the negroes in controversy.

Upon the trial, complainants offered in evidence the original deed, having the appearance of a mutilated paper, of which the following is a copy:

GEORGIA, BURKE COUNTY. Know all men by these presents, that I, Dennis Glisson, of the State and county aforesaid, for and in consideration of the love, good will and affection that I have and do bear towards my daughter, Eliza Burke, and her two children, Mary and Eliza, of the same place, have given and granted, and by these presents, do freely give and grant unto the said Eliza Burke, and her said two children, their heirs and assigns, a negro woman named Ann, with her child, Lewis, and a girl named Redilla, with their increase; reserving to myself the right to use said property for my own proper use and benefit during my natural life; to have and to hold the above named negroes unto them, the said Eliza Burke and her said two children, their heirs and assigns forever; and I, the said Dennis Glisson, for myself, myself, my heirs, executors and administrators, shall and will warrant and defend by these presents.

In witness whereof, I have hereunto set my hand and seal this twenty-eighth day of October, eighteen hundred and thirty-seven.

his<br>
DENNIS ⋈ GLISSON. L. S.<br>
mark.

Signed, sealed and acknowledged in presence of
GEORGE S. PERRY,
GEORGE POLLOCK.
ISAAC J. HEATH, J. P.

GEORGIA, BURKE COUNTY.

*Clerk's Office, Superior Court.*
·Recorded in Record Book, Deeds No. 11, folios 34 and 35, this 29th May, 1852.

EDWARD GARLICK, Clerk.

Defendants' counsel objected to the said deed going to the jury, on the ground of its appearing upon its face to have been *altered.* The Court sustained the objection and refused to allow the deed to be read to the jury.

Complainants then introduced Jacob G. Glisson, who testified, that he had seen the deed tendered him; that his father, said Dennis Glisson, had made deeds to his several children or grand-children of like character of the above deed; that by one of said deeds witness was given property; that after his father's death there was some dissatisfaction among the heirs, on account of witness' receiving more than the other distributees; that witness and the other distributees agreed to an equal division of D. Glisson's estate, the witness keeping the land, and the other heirs what property they were in possession of; that he and the other distributees agreed to tear up all the papers (deeds or wills) made by their father; that in consequence of said agreement, witness destroyed by tearing said deed now offered; that afterwards, he thinking that perhaps he had done wrong, collected the pieces and pasted them together; that the deed offered is said deed; that when he collected and pasted the pieces together, all the parts were in his possession; they were pasted upon another sheet of paper; that the two corners, right and left, at the top, becoming lost, he supplied the same, running out on the new sheet of paper the words wanting; that with this ex-

ception, the paper is the original deed; that at the time of the destruction of said deed, complainants' wives were minors and very young; were not represented at said agreement to destroy said papers, and were not represented nor did they consent to the division of property of Dennis Glisson; that Mrs. Eliza Stone, wife of defendant, J. G. Stone, was in the house when the papers were destroyed, and knew and consented to said destruction; that Mrs. Eliza Stone is the daughter of Dennis Glisson, and mother of complainants' (Oliver and Lassiter') wives; that her first husband was Jeremiah Burke; on her marriage with Burke, she carried the negroes named in the deed with her; they remained in her possession till on Burke's death, old man Glisson carried her, Mrs Burke, her two daughters and negroes back to his house, where they remained, till Stone's marriage with Mrs. Burke, when the said negroes were carried home by Stone's and his wife.

*Jacob G. Glisson cross-examined:* That said paper and others of like character to other children, was in possession of said Dennis Glisson at the time of his death, found in his desk, and all were destroyed or torn up with the deed in question; that said supplied parts were made by witness from recollection, except the interlineation of the words "granted" and "grant" on the 7th and 8th lines; that the words were "bequeathed" and "bequeath;" all the fragments were at first in his possession and pasted together, but afterwards became some of them lost; that there was a division of D. Glisson's property between the heirs at law; the petitioners were A. S. Jones, Robert Lovet and P. L. Wade, the others not recollected; that the negroes conveyed by said deeds were not comprised in said division; the agreement among the heirs was that each one should keep the negroes their father had conveyed, and that they themselves should value them; that said petitioners had nothing to do with said negroes. Dennis Glisson died before the deed was recorded.

*By Complainants.*—That the supplied parts of said deed

are as the original, except the words granted and grant; with this exception believes that it is the same as the lost parts.

Complainants again offered the deed, which the Court, upon objection, refused to allow to go to the jury, for want of proof of execution, holding that the Clerk's certificate of the mutilated deed did not amount to such proof.

Complainants then introduced Isaac J. Heath, who, being sworn, testified that, at the request of Dennis Glisson, he prepared said deed, and others of like character, conveying property to his children and grand-children; that said Dennis Glisson signed, sealed and acknowledged said deeds at the district court ground; that George S. Perry, George Pollock and witness tested the same, in the presence and at the request of said Dennis; that witness attested the same officially, as a Justice of the Peace, and the paper presented is the same, substantially, as the one he drafted; that among said deeds was one conveying property to Jacob G. Glisson of like character with the one now in contest.

*Cross-examined.*—That Dennis Glisson carried all of said deeds written by witness away from the court ground with him after the execution of the same.

Complainants' counsel asked Isaac J. Heath if Dennis Glisson did not then do all that he deemed necessary for the due execution of the deed, which being objected to by defendants was overruled by the Court.

Complainants offered George S. Perry, who testified that Mr. D. Glisson sent for him to witness some papers, which he did with George Pollock and Squire Heath; they all attested the deed presented at Mr. Glisson's request; Mr. Glisson executed the same, in their presence, at the court ground; that Dennis Glisson said it was his deed. There were other deeds executed at same time. Dennis Glisson took them all home; that none of the grantees nor any one representing them was present.

Complainants offered the deed, which being objected to as

Oliver and wife et al. vs. Stone and wife.

appearing to have been altered and wanting delivery, the Court again ruled out.

Complainants then offered the deed as mutilated paper, with a copy of the same in its original form, which the Court ruled out.

J. G. Glisson recalled for complainants, testified that his father told him he had given property to his children, and that he had given him (the witness) enough, if he would take care of it.

Complainants asked J. G. Glisson if his father did not consider the property named in this deed as being conveyed to grantees, according to its terms, which being objected to, the Court refused to allow the witness to answer.

The depositions of Christian Paris and Frederick Bell, two witnesses examined by commission, on the part of complainants, were rejected by the Court, on the ground of their irrelevancy to the issue made by the bill and answer.

Whereupon complainants dismissed their cause, but without prejudice, and except to the rulings and decisions of the Court excluding said testimony and evidence.

McKenzie & Ward, Jones & Sturges, for plaintiffs in error.

Millers & Jackson, C. J. Jenkins, for defendants in error.

*By the Court.*—Benning, J. delivering the opinion.

Oliver and wife, and Lassiter and wife, claim, not as heirs of Jeremiah Burke, the father of the two wives, but as donees of Dennis Glisson, the grand-father of the two wives—donees under a deed of gift made, as is alleged, by Dennis Glisson.

Stone and wife deny the existence of any such deed of gift

They say, that if any such deed was ever written and signed, by Dennis Glisson, it was never *delivered* by him.

The Court below excluded this deed or paper, from the jury, thinking, that the evidence was not sufficient to show the paper to have been delivered. This seems to be the ground on which the Court put its final decision—a decision made after all the evidence was out.

Was there evidence sufficient to show a delivery of the paper? This, then, is the question.

The evidence of the two of the subscribing witnesses, examined, was to this effect: that Dennis Glisson " signed, sealed and acknowledged" this, and other "deeds" "of like character," conveying property to other children or to grandchildren; that they signed the "deeds" as witnesses, and at his request; that he said this was his deed; that he took all of the deeds into his own possession after signing them and carried them away with him; that none of the grantees, or any one representing a grantee, was present.

The evidence of Jacob G. Glisson was, that this paper and others of like character, to other children, was in the possession of Dennis Glisson at his death, being found, after his death, in his desk; that these papers were all torn up by the heirs, who agreed among themselves, that the property should be equally distributed among them; that he gathered up the fragments of this paper, and pasted them on another sheet of paper; that this paper was recorded, but not until after the death of Dennis Glisson.

This witness also testified, that, on the marriage of Mrs. Stone with Burke, her first husband, she carried the negroes mentioned in this paper home with her; that they remained in her possession till Burke's death, when old Mr. Glisson carried her, her two daughters, and the negroes, back to his house, where they remained till Stone's marriage with her, when the negroes were carried home by Mr. and Mrs Stone.

This I believe is all of the evidence, that bears upon the question of the delivery of the paper.

And this, we think, is not sufficient to show a delivery of the paper. This shows, that the paper was never delivered to any one, for any purpose, but that it was always kept by the person who signed it, in his own possession along with other papers of a similar character, signed by him at the same time. Had he parted with dominion over the paper? Had he lost the power of revoking it? We think not. *Acton vs. Woodgate*, 2 *Myl. & Keene; Garrard vs. Lord Lauderdale*, 3 *Sim.; Wallyn vs. Coutts*, 3 *Mer.* 707 ; *Williams vs. Everett*, 14 *East* 582. In *Garnors vs. Knight*, 12 *Eng. Com. L. R.*, there was, first, a delivery of the paper to the sister of the donor, with directions to keep it, and a *statement*, that it belonged to the donee; secondly, an understanding between the donor and donee, that the former was *to secure* the latter. Still, I must say, that I think *Garnors & Knight* somewhat difficult to uphold.

But it was insisted that the possession of the negroes, was in accordance with the paper, and that this fact was sufficient to make out the delivery of the paper. But is it true, that the possession of the negroes was in accordance with the paper? The possession commenced in Mrs. Stone with her first marriage—a time long before the date of the paper. There is no evidence to show, that she ever surrendered this possession to her father, the signer of the paper; nor is there any, to show that she ever recognized the deed, or even knew of its existence before his death. True, she went with the negroes to his house to live with him, when her first husband died; but it is equally true, that when she married again she went away with the negroes; and there being nothing to show, that she knew of the existence of this paper, at this time, it is to be presumed, that she went away holding the negroes under the same title under which she had held them, when she came.

Then, it was said, that the paper had been recorded. But the act of recording did not take place, until after the death

Oliver and wife et al., vs. Stone and wife.

of the signer of the paper. The act therefore, could not be his act; and if not his act, it could not be an act that could affect him, or, the paper.

Upon the whole, then, we think, that the evidence was not sufficient to show a delivery of the paper. Consequently, we think, that the Court below did not err in its final judgment made when all the evidence was out, excluding the paper from the jury.

It becomes unnecessary, therefore, to consider the previous judgments of the Court, made at successive stages of the evidence, excluding the paper.

Some interrogatories were excluded.

These, if admitted, would have proved, that the negroes belonged exclusively to the two daughters of Mrs. Burke, (afterwards Mrs. Stone,) whereas the paper said, that the negroes belonged equally to her and the two daughters. The interrogatories, therefore, could not have supported the paper, and the bill was founded solely upon the paper. We see no error, therefore, in the exclusion of the interrogatories.

We find nothing, then, to reverse, in the action of the Court below.

But we do not wish to be understood as intimating an opinion, that the plaintiffs in error, may not have a right of action *as heirs of Jeremiah Burke.* The question, whether they may, or may not, have such an action, is not presented by their case as that now stands.

Judgment affirmed.