Syllabus.

## SARAH L. HALL ET AL. *v.* ALBERTA C. WADDILL ET AL.

### ON FIRST HEARING, FIRST APPEAL.

1. DEED. *Delivery. Subsequent acts of grantor.*

   If a deed be once effectually delivered, no subsequent acts of the grantor can disparage the title thereby conveyed.

2. SAME. *Signing by trustee. Evidence.*

   The fact that the person named as trustee signed an instrument purporting to convey lands to him in trust, is not conclusive evidence of delivery by the grantor.

3. SAME. *Essentials of delivery.*

   To effect a valid delivery of a deed, the grantor must part with it so absolutely and irrevocably as never thereafter to have the right to recall it.

4. SAME. *Test of delivery.*

   The test as to whether a deed has been delivered is the right of the grantee to its possession.

### ON APPLICATION TO AMEND SUPREME COURT JUDGMENT AND MANDATE, FIRST APPEAL.

5. BILL OF REVIEW. *Newly discovered evidence. Application to court of original jurisdiction.*

   An application to file a bill of review, based on newly discovered evidence, even after affirmance by the supreme court of the decree sought to be avoided, should be made to the chancery court which rendered said decree, and not to the supreme court.

6. SAME. *Affirmance does not destroy right.*

   The affirmance of a decree of the chancery court by the supreme court does not affect the right to ask leave of the chancery court to file a bill of review, based on newly discovered evidence.

### ON SECOND HEARING, SECOND APPEAL.

7. RENTS. *Admissions in pleadings. Code 1892, § 53. Taxes, etc.*

   Where, in an equity suit for lands and the rents thereof, the defendants, by their answer, deny complainants' title to the land, but

admit the rental value to be as charged in the bill, they will not, after the affirmance by the supreme court of a decree against them establishing complainants' title, upon an accounting for rents, under code 1892, § 53, authorizing a judgment on a supersedeas appeal bond, be precluded from showing that the value of the land had decreased, and that its rental value was not so great as when the answer was made; and they may show that taxes and other valid charges on the land were paid off out of the rents.

FROM the chancery court of Sharkey county.

HON. WILLIAM. C. MARTIN, Chancellor.

Alberta C. Waddill and others, appellees, were the complainants in the court below; Sarah L. Hall and others, appellants, were defendants there. The purpose of the suit was to cancel a deed as a cloud on complainants' title. The main fact upon which the cause depended is fully stated in the opinion of the court. The complainants obtained a decree in the court below, and defendants appealed to the supreme court.

*Miller, Smith & Hirsh* and *H. J. McLaurin*, for appellants.

1. Deed. When complete and valid: "If both parties be present, and the usual formalities of execution take place, and the contract is to all appearances consummated, without any conditions or qualifications annexed, it is a complete and valid deed, notwithstanding it be left in the custody of the grantor." 4 Kent Com., 456; *Souverbye* v. *Arden*, 1 John., p. 240; *Scrugham* v. *Wood*, 15 Wendell, 515; *Doe* v. *Knight*, 5 Barn. & Cress., 671; *Wallace* v. *Berdell*, 97 N. Y., 13, and other cases.

2. Voluntary settlement. Between grantor and grantee, when deed valid if undelivered: In a voluntary settlement, where the rights of creditors, or subsequent purchasers, are not involved, the mere fact of the maker's retaining the instrument in his own keeping, intending that it should be considered as executed and delivered, will not render it invalid for want of delivery. *Wall et al.* v. *Wall*, 30 Miss., 91; *Clavering* v. *Clavering*, 2 Ver., 473; *Souverbye* v. *Arden*, 1 Johns. Ch., 240;

*Arnegaard* v. *Arnegaard et al.*, 7 N. D., 475, s. c. 75 N. W., 797; *Cecil* v. *Beaver*, 28 Iowa, 241; *Tarbox* v. *Grant et al.*, 39 Atl. (N. J.), 378.

3. Deed. Delivery, when effectual : "If a deed be signed and sealed, and declared by the grantor, in the presence of the attesting witnesses, to be delivered, it is an effectual delivery, if there is nothing to qualify it." *Kane* v. *Mackin*, 9 Smed. & M., 387, and cases in brief.

4. "Delivery to trustees equivalent to a delivery to the *cestui que trusts.*" *Ingraham* v. *Grigg*, 13 Smed. & M., 22.

5. "If the deed be entirely for the benefit of the donee, his acceptance of it will be presumed." *Wall* v. *Wall*, 30 Miss., 91.

6. Acknowledgment. When conclusive: "As between grantor and grantee, the conclusive presumption must be indulged that the officer intrusted by law with this duty, and before whom the married woman came to acknowledge the deed, did his duty when called on to perform it." *Johnston* v. *Wallace*, 53 Miss., 331.

7. Delivery. Contents of instrument permissible to show: "In considering the question (of delivery), it is permissible to look to the contents of the instrument in aid of, or in opposition to, the fact of its delivery." *Neblett* v. *Neblett*, 70 Miss., 572.

8. Delivery passes title. Retention of possession, cancellation, or return, or destruction of deed does not revest title. *Burton* v. *Wells*, 30 Miss., 688; *Partee* v. *Matthews*, 53 Miss., 140; *Connor* v. *Tippett*, 57 Miss., 594; *McAllister* v. *Mitchner*, 68 Miss., 672; *Boswell* v. *Boswell et al.*, 44 S. W. (Ky.), 454; *Arnegaard* v. *Arnegaard, supra*, 7 N. D., 475; *Davis* v. *Williams*, 57 Miss., 843.

9. Declarations of the grantor, subsequent to the alleged delivery incompetent to impeach it. *Arnegaard* v. *Arnegaard, supra*; *Souverbye et ux.* v. *Arden, supra*, and cases cited.

10. Declarations of the intention or understanding of the grantor different from the intent apparent on the face of the

deed, or conditions annexed to it, to be effectual, must be made at the date of executing it. *Souverbye et ux.* v. *Arden, supra.*

11. If, at the time of executing the deed, there were no delivery or intention to deliver, these are facts that should be explicitly proved by the grantor. *Souverbye et ux.* v. *Arden, supra.*

12. Delivery to take effect after grantor's death valid. 9 Am. & Eng. Enc. L., 2d ed., p. 157, title "Deeds," and large number of cases cited.

13. Acquiescence. Subsequent assent to delivery effectual. 1 Am. & Eng. Enc. L., p. 570, 2d ed.; *Kingsbury* v. *Burnside,* 58 Ill., 310.

14. Retention by one grantor of a trust deed, vesting in him, in the event he survives his wife, the owner and co-grantor, a life interest in the property conveyed, with remainder to his descendants, is, after its acceptance by the trustee, in subordination to, and cannot defeat, the trust. *Scrugham* v. *Wood, supra; Boswell* v. *Boswell et al., supra.*

*McLaurin & McKnight,* for appellees.

The deed counted upon by appellants was never delivered, and therefore was never operative. That delivery is necessary to the validity of a deed, cannot be questioned under the authorities. *Davis* v. *Williams,* 57 Miss., 843; *Faut* v. *Smith,* 14 Oregon, 82, s. c. 58 Am. Rep., 281, and note; *Jones* v. *Jones,* 6 Conn., 111, s. c. 16 Am. Dec., 125, and note; *Cook* v. *Brown,* 43 N. H., 460.

A deed or other instrument cannot be delivered to the grantee as an escrow to take effect on condition not appearing on its face.

In order to operate as an escrow, the delivery must be made to a stranger and one not a party, or otherwise the deed or other instrument will become absolute at law, and parol evidence of conditions qualifying it as inadmissible. Am. & Eng. Enc. L., vol. 6, 858.

The registration of a deed is not delivery.

In the case of *Fisher* v. *Beckwith*, 30 Wis., 55, and 11 Am. Rep., 546, it was held that where a deed not executed and which had never been delivered was stolen from the possession of the grantor, without negligence on the part of the grantee therein, that no title passed even as to subsequent purchasers, and from this case we quote the following:

" It is essential to the validity of a deed that it should be delivered, and such delivery, to be valid, must be voluntary— that is, made with the assent and in pursuance of an intention on the part of the grantor to deliver—and if not so delivered it conveys no title. A deed purloined or stolen from the grantor, or the possession of which was fraudulently or wrongfully ob· tained from one without his knowledge, consent or acquiescence, is no more effectual to pass the title to the supposed grantee than if it were a total forgery, and an instrument of the latter kind has been spread on the record." See, also, *Stone* v. *French*, 37 Kan., 145, s.c. 1 Am. St. Rep., 240.

In our own state in the case of *Metcalfe* v. *Brandon*, 60 Miss., 685, it was held that " the placing of a deed on record by the grantor was strong presumptive evidence of delivery, and where the deed confers substantial rights on the grantee, acceptance on his part will be inferred from very slight cir- cumstances, but such presumptions may be overthrown by direct and negative proof."

The record of the instrument under consideration was not any legal evidence of its delivery. It was drawn in 1879; it never appeared upon the public records until 1894, immediately after the death of W. T. Barnard, one of the parties named as grantors therein. In fact the testimony of W. B. Barnard upon the subject of the recording of this instrument is that his father gave it to him to take care of, and not let it get destroyed, and have it recorded after his death. Here we see the positive and direct requirement of W. T. Barnard that said instrument should not go upon the record until after his death. There is nothing whatever shown as coming from E. J. Bar-

nard, between the 21st day of July, 1879, and the 24th day of November, 1894, with reference to the registration of this deed. Then we have it that after the death of W. T. Barnard, W. H. Barnard having been requested by his uncle, W. T. Barnard, to get the instrument from the safe of Dover, in the event of his death, and to have the same recorded, is the only authority by which this instrument appears of record, for W. H. Barnard in his deposition says clearly and distinctly that he did it by authority from his uncle and no one else. Hence we have a deed placed upon the public record by the agent of one of the grantors after the death of such grantor, and without any authority whatever from any other person, and without it ever having been shown that Mrs. Barnard ever knew or heard of the fact that the instrument was upon record. There is not the slightest attempt upon the part of appellants in all the depositions taken by them to show that Mrs. E. J. Barnard knew anything whatever of the fact that this instrument was recorded after the death of her husband. On the part of appellees the question was asked of several witnesses for appellants, whether they ever heard Mrs. Barnard, after the death of her husband, or for that matter, before, say anything about a will being probated or a deed having been placed upon record, and in every instance the answer was that they never did hear her say anything of the sort.

The acceptance of the trust by the trustee is not proof of delivery of the deed by the grantors, nor does it render delivery unnecessary, any more than the signing and acknowledging of the instrument constitutes delivery, which is not the case, it being settled beyond all dispute, as a proposition of law, that the delivery of a deed is as essential as the signing, sealing and acknowledging, and that without it all the others are ineffectual. The signing of this instrument by W. B. Barnard was stated to be in token of his acceptance of the trust, not in token of his acceptance of the conveyance.

The delivery of a deed cannot be made except in the lifetime

of the grantor. *Prustman* v. *Baker*, 30 Wis., 644, s.c. 11 Am. Rep., 592; *Bennison* v. *Aiken*, 102 Ill., 224, s.c. 40 Am. Rep., 252; *Gilmore* v. *Whitesides*, 31 Am. Dec., 503; *Baker* v. *Haskell*, 47 Mass., 479, s.c. 93 Am. Dec., 455; *Maynard* v. *Maynard*, 10 Mass., 456, s.c. 6 Am. Dec., 146; *Weisinger* v. *Cook*, 67 Miss., 511.

Argued orally by *J. Hirsh*, for appellant, and by *Theodore McKnight*, for appellee.

WHITFIELD, C. J., delivered the opinion of the court, first appeal.

In 1856 W. T. Barnard, then a widower and a large landowner in Issaquena county, married Mrs. Eudora Likens, a widow without children. No children were born to them. Mrs. Likens brought to her husband about $23,000 in money and property. The war having ruined his fortune, and suits being threatened, W. T. Barnard executed to R. S. Buck, as trustee, a deed in trust, conveying lands therein described, to secure the repayment of his indebtedness to his wife. This was done September 29, 1866. Buck sold under this trust deed, and, on January 4, 1870, executed a conveyance of these lands to Mrs. Eudora Barnard. Other conveyances were later made to Mrs. Barnard, whereby she acquired other lands. Of all these lands, it is admitted, she remained the owner to the time of her death, except certain lands excepted by agreement. All this while, however, W. T. Barnard remained the owner of 160 acres of land, included in the trust deed in controversy, up to the execution of that instrument. W. T. Barnard had by a former wife a son, W. B. Barnard, Sr., and a daughter, Sarah Louisa, then Mrs. Hall. W. B. Barnard, Sr., had three children—W. B. Barnard, Jr., his youngest child, and West Barnard and Virginia Barnard (now Virginia Crockett). Mrs. Eudora Barnard took W. B. Barnard, Jr., upon his mother's death, and seemed to have been specially devoted to him. He

died at school about 1890. W. B. Barnard, Sr., married again about two years prior to the execution of this trust deed. On July 21, 1879, W. T. Barnard and Eudora Barnard signed and acknowledged the deed in question, and W. B. Barnard, Sr., signed it as trustee, "in token of his acceptance of the trust."

It is plain, from an inspection of the instrument, that W. B. Barnard, Sr., signed before the others. Under the terms of the deed as drawn, certain lands were vested, on certain contingencies, in W. B. Barnard, Sr. The deed was materially altered by putting a caret between the words "vested in" and "W. B. Barnard, Sr.," and writing in the margin, in pencil, "West Barnard and Virginia Barnard, the grandchildren of the said W. T. Barnard, and children of said W. B. Barnard, Sr., in equal shares." A similar alteration is twice afterwards repeated in the deed. W. B. Barnard, Sr., and S. L. Hall, in attempted execution of the trusts of this instrument, executed certain conveyances, W. B. Barnard, Sr., conveying 160 acres of the land, however, after the filing of this bill. The appellants claim under the trust deed in its altered form, but furnish no explanation of when or how or why or by whom it was altered. It is incredible that Mr. Clark, the lawyer who drew the instrument, left it in the condition it is now in.

The deposition of W. B. Barnard, Sr., was properly suppressed, and what it contains is out of the case. The trust deed was put by W. T. Barnard in the safe of a merchant in Anguila (Mr. McKinny), in a sealed envelope, on which was this indorsement, written by McKinny at W. T. Barnard's request, and signed by him: "This package to be delivered to no one, under any circumstances, except to W. T. Barnard or W. B. Barnard." The end of the envelope had been torn off when it came into the possession of W. H. Barnard, a nephew of W. T. Barnard, November 23, 1894. After some time W. T. Barnard took the package and put it in another envelope, and sealed it, and deposited it in the safe of another merchant in Anguila (Mr. S. Dover), where it was kept till the

day after W. T. Barnard's death, November 24, 1894, when it was delivered to Dr. W. H. Barnard, who put it on record, the clerk recording it as originally written, with the alterations included, resulting in unintelligibility. On this second and outside envelope W. T. Barnard himself wrote, "This not to be handed to any one, except to W. H. Barnard or myself;" and in the handwriting of Dover appeared, "Not to be delivered to any one, under any circumstances, except to W. H. Barnard or to W. T. Barnard."

W. H. Barnard, it will be observed, for some reason satisfactory to W. T. Barnard, was substituted for W. B. Barnard, Sr. Both McKinny and Dover testify that the deed was not to be delivered to any one except W. T. Barnard until after his death, and that in one case after death of W. T. Barnard it was to be delivered to W. B. Barnard, Sr., and in the other case, after said death, to W. H. Barnard. One testifies that it was, as he understood W. T. Barnard, subject to his control; and both that he could get it at any time. There is no proof as to any delivery by Mrs. Eudora Barnard except the entirely contradictory testimony furnished by differing witnesses as to her declarations. The impression left by this testimony is too vague to be of much value, tending, as we think, to show that she thought she had made a will. From the time the instrument was put in the safe of Dover till the death of W. T. Barnard, so far as shown, it never saw the light, and it was never recorded. A number of judgments had been rendered against W. T. Barnard, and it was not until about the date of the execution of this instrument that they were arranged. These embarrassments out of the way, this paper was made. If Mrs. Barnard had died without issue, will or deed, W. T. Barnard would have inherited all her part of the lands attempted to be conveyed by her. In that case he did not care that the deed should be delivered. There were changes in his family and estate, too, in this long interim. Willie had died. W. B. Barnard, Sr., had married again. And now follows what is inex-

plicable, on the theory of delivery. From January 28, 1887, up to February. 13, 1889, W. T. Barnard and Endora Barnard executed no less than six different trust deeds upon lands embraced in this trust deed of July 21, 1879, making affidavits that they were owners thereof in fee simple, and that there were no incumbrances, recorded or unrecorded, thereon, except · those named, never naming this instrument once in all these transactions. And on September 22, 1888, they executed a deed, with full warranty of title, to a certain acre of ground covered by this instrument, on which was a ginhouse. A deed was also made of part of these lands in 1887 to Mrs. Hall, and she afterwards, in the lifetime of both W. T. and Endora Barnard, executed trust deeds thereon, representing the land to be free of all incumbrances, with affidavit to that effect.

Was the deed delivered? Of course, if a deed has once' been effectually delivered, no subsequent acts of the. grantors can disparage the title. The mere fact that the trustee signed is ·not conclusive of delivery any more than the signing by the grantors is conclusive of delivery. If grantors and trustee all sign, but the grantors . retain 'the possession of. the deed, with the right to control it, not intending to deliver it then, the mere signing by the trustee does not overrule their intention and constitute what they have done a delivery *in invitum.* Actual, manual tradition of the deed· is not 'necessary, where the beneficiaries are infants, incapable of assent, and the grant wholly beneficial to them, there being a presumption of acceptance on their part in such cases. But delivery on the part of the grantors in some legal mode must nevertheless be shown, and direct, negative evidence of any such delivery defeats the grant, though a voluntary settlement, no matter how beneficial to infants. *Metcalfe* v. *Brandon,* 60 Miss., 685. If one chooses to make a voluntary settlement by deed, he must make a deed, and all that is necessary to a valid deed—that particular mode of conveyance—must be shown. True, a deed once delivered may be kept in the custody of the grantor. *Davis* v. *Williams,* 57

Miss., 843.   True, also, actual, manual tradition may not always be necessary, where the grantee is an adult even.   9 Am. & Eng. Enc. L., 153, note 4, with authorities.   But a deed is not delivered until the grantor either has actually placed it beyond his control or has indicated an intention of so treating it.   Delivery is not consistent with intention to recall.   *Id.*, 155, note 3, with authorities.   True, also, that a grantor need not deliver to the grantee directly.   If he does, the delivery must be in his lifetime.   He may, however, deliver it to a depositary to be by him delivered to the grantee, and this last delivery will be good, though made after grantor's death, provided always, and only if, the depositary accepted in the capacity of agent of the grantee, not the grantor, so that the grantor could never recall it.   It "must be left with the depositary without a reservation by the grantor, express or implied, of the right to retake it or otherwise control its use."   *Id.*, 157, note 2, with authorities.   It is perfectly clear here that W. T. Barnard never parted with the control of this instrument.   He never meant it to be effective as a deed in his lifetime, and he retained and exercised the right to control it as against W. B. Barnard, Sr., the trustee, as well as against McKinny and Dover.   The testimony of McKinny, Dover and W. H. Barnard places this beyond all cavil.   We do not look to the conveyances subsequently executed, except to show his intent.   For that purpose they are competent, and of tremendous significance.   Mrs. Barnard is not shown to have delivered the instrument.   Indeed, she never knew anything about its being taken from Dover's safe and recorded, although she lived for four years thereafter, dying in March, 1898.

But learned counsel for appellants make their chief stand on the law as to what constitutes delivery, and review and discuss many authorities.   What is the law on this subject?   Inquiring now more closely still, what is the crucial test of delivery?   The question is purely one of intent, and it is established beyond controversy, by an overwhelming weight of authority,

that, in order to a valid delivery, the grantor must part so absolutely and irrevocably with all dominion over the deed as never thereafter to have the right to recall it from the depositary—so absolutely and irrevocably as that the grantee can get it at once from the depositary when the delivery is absolute, and immediately upon the performance of the condition where a condition is imposed. *Cook* v. *Brown*, 34 N. H., 471–475. The depositary must become the agent of the grantee, and hold the deed for him. And, finally, when the last step in the logic is reached, the crucial test is, did the grantor part so irrevocably with all dominion over the deed as that he could not recover it from the depositary in replevin? In *Id.*, 460, the defendant, Brown, claimed under a deed, duly acknowledged, made by Nancy Brown and himself to French Fifield, a boy fourteen years old. This deed was put in charge of a depositary, Mr. Lane, in whose possession it was at his death, and was by his administrator delivered to defendant, Brown. Declarations of grantor that she intended to convey to French Fifield, and had conveyed to him, the property, were proven.

The court say: "The court instructed the jury, that, if the deed was in the hands of the depositary, to be delivered to the grantee, either before or after the death of the grantor, without the grantor's reserving a control over it, then there was a good delivery; but, if the grantor reserved such a full control over the deed during her life, and to the last moment of her life, there was no delivery. If she always had the right to control the destination of the deed, there was not a delivery, but, if she, at any time, relinquished her right in favor of the grantee, there was a delivery; that the question was, whether she always, until her death, continued to have the right to recall the deed if she pleased, and not whether she did in fact recall it. The court was requested to instruct the jury that, if the deed was to remain in the hands of the depositary during the life of the grantor, subject, however, during that time to be revoked by the grantor, and, if not revoked, then to be

recorded, the deed might be regarded as the deed of the grantor from the time of the delivery to the depositary, if it was not subsequently revoked. These instructions the court declined to give, and gave those which we have stated.

"The point of difference between the two was this: The court held that, in order to make the delivery good, it was essential that the grantor should part with her dominion over the deed; that the time when the grantee was to receive it was not material, whether at or before the decease of the grantor, but that the delivery to the depositary must be without the power of recall in the grantor; while the defendant contended that if the deed was in fact delivered in pursuance of the directions of the grantor, it made no difference that the grantor had reserved the right of recalling the deed at any time. . . .

"In *Parker* v. *Dustin,* 2 Fost. (N. H.), 424, a grantor executed a deed, and delivered it to a third person, with instructions to deliver it to the grantee upon the grantor's death. He afterwards told the grantee that he had given him the land, and directed him to take possession of it, which the grantee did, and afterwards remained in possession; and it was held that it was a question of fact for the jury, upon the evidence, whether the grantor deposited the deed with the third person, to be delivered at his decease, without reserving any control over it during his life, and that the deed should be considered as delivered or not, as the finding of the jury might be on the question of his intention—that is to say, if he intended to reserve a control over the deed, it was no delivery, but if he did not so intend, it was a delivery.

"In *Doe* v. *Knight,* 5 Barn. & C., 671, cited and approved in *Wall* v. *Wall,* 30 Miss., 91, the court told the jury that the question was for them to decide, whether the delivery to the depositary was, under all the circumstances of the case, a parting with the possession of the deed, and of the power and control over it, for the benefit of the grantee, and to be delivered to him either in the lifetime of the grantor or after his death,

or whether it was delivered to the depositary subject to the future control and disposition of the grantor. If for the latter purpose, they should find for the defendant. The point in that case was distinctly put. The defendant was seeking to defeat the deed, and the court held the validity of the deed to depend upon the question whether the delivery to the depositary was or was not subject to the future control of the grantor.

"In *Bank* v. *Reckless*, 5 N. J. Eq., 430, it was held that, to constitute the delivery of a deed, the grantor must part, not only with the possession, but with the control of it, and deprive himself of all right to recall it. . . . In *Maynard* v. *Maynard*, 10 Mass., 456, the court in speaking of the deed which was in controversy in that case, and of the grantor, say: ' He probably chose to consider it as revocable at all times by himself, in case of any important change in his family or estate. Whatever may have been his views, however, he retained an authority over it.' It is the retaining of the authority over it that shows the delivery to have been incomplete. *Jackson* v. *Phipps*, 12 Johns., 421; *Jackson* v. *Dunlap*, 1 Johns. Cas., 114; *Kirk* v. *Turner*, 16 N. C., 14; *Gilmore* v. *Whitesides*, Dud. Eq., 14; *Hooper* v. *Ramsbottom*, 6 Taunt., 12; *Habergham* v. *Vincent*, 2 Ves., Jr., 231. . . . But, so long as a deed is within the control and subject to the authority of the grantor, there is no delivery; and whether in the hands of a third person or in the desk of the grantor is immaterial, since in either case he can destroy it at his pleasure. To make the delivery good and effectual, the power of dominion over the deed must be parted with. Until then the instrument passes nothing. It is merely ambulatory, and gives no title. It is nothing more than a will defectively executed, and is void under the statute. . . . There must be a time when the grantor parts with his dominion over the deed, else it can never have been delivered. So long as it is in the hands of a depositary, subject to be recalled by the grantor at any time, the grantee has no right to it, and can acquire none; and, if the

grantor dies without parting with his control over the deed, it has not been delivered during his life, and after his decease no one can have the power to deliver it. The depositary must have had such a dominion over the deed during the lifetime of the grantor as the latter could not interfere with, in order to have any control over it after his decease. We think the instructions of the court below were correct, and that if the grantor, until her death, reserved the right to recall the deed from the hands of the depositary, there was no delivery." Pages 471-475.

In *Baker* v. *Haskell*, 47 N. H., 479, the defendant claimed under a deed duly acknowledged, and the proof of delivery was this: "When he first introduced the subject of this deed he said that his son, the defendant, who had recently got married, had said to him that he felt as if he ought to make some arrangement of his property, so that he might know what he was to have. He [the grantor] said, ' He is my only son, and bears my name, and I always meant to do well by him, but I don't know how he will use the property. Here is a writing in his favor. It is for him, but I don't want him to have it in his hands just now. I want you to take it and keep it in your possession till a proper time to produce it. If I keep it in my hands I don't know who will get hold of it.' I carried the writing home, and put it in my desk. I did not know what the contents were, and he did not tell me. I kept it until a short time after his death. I then inclosed it in an envelope and sent it to Joseph Haskell, Jr., the defendant. I think this is the paper." Pages 479, 480.

The court say (pages 480, 481): "If the grantor continues till his death to have the right to recall the deed from the depositary, there is no delivery." In *Winkley* v. *Foye*, 33 N. H., 171, it was held, in accordance with what we understand to be the general rule, that a party who deposits money with another, to be appropriated for the benefit of a third person, being under no legal obligation so to appropriate it, has a right to counter-

mand the appropriation and recall the money at any time be-
fore it has been actually appropriated, or before such an
arrangement has been entered into between the depositary and
the person for whose benefit it was deposited as creates a privity
between them, and amounts to an appropriation of it.    Any-
thing short of this is immaterial and unimportant so far as con-
cerns the depositor's right to recall and recover back his money.
See, also, *In re Perry's Petition*, 16 N. H., 44-46.

No reason is perceived why the same principle should not
apply to the deposit of a deed.    In the present case there is no
evidence of any arrangement between the depositary and the
grantee creating any privity between them.    On the contrary,
it would seem that the grantee never knew of the existence of
the deed till after the grantor's death.    The grantor never lost
his right to control, in this case, the deed, and could have main-
tained replevin for it against the depositary after a demand and
refusal.    But where, as in this case, there is no question of es-
toppel, it is difficult to see how the grantor's intention to part
with all dominion over the deed, supposing such intention to
have existed, can avail the grantee, if no act has been done
which will in law be regarded as carrying out this intention,
and as barring his right to recall the deed.    If a grantor, after
demand and refusal, should bring replevin against a depositary
who had had no communication with the grantee, the depositary
could not set up the defense that the grantor, when he gave
him the deed, did not retain the right to recall it.    The grantor
has the right to change his mind and recall the deed at any
time before the depositary has entered into an arrangement
with the grantee to hold it for him or deliver it to him.    The
fact that in this instance the grantor did not recall the deed is
immaterial.    If he had the right to recall it, there was no de-
livery.

In *Johnson* v. *Farley*, 45 N. H., 505, the proof of delivery
was this (p. 506):  That Edward Emerson, grantor, signed the
deed and acknowledged it before him (Benjamin F. Emerson),

as a justice of the peace, and left it in his hands and requested him to put it on record for the grantees, and he did so; that, after the deed was recorded, the register returned it to him, and he thought he delivered it over to Leonard Pewett, one of the grantees, but was not positive; that he knew Leonard Pewett had it soon afterwards.    And (p. 508), by Joel Hardy, "that he saw this mortgage in her (plaintiff's) hands in February or March, 1861."    The court say (pp. 509, 510): "As to the first point, it would seem to be clear that, to constitute a valid delivery of a deed, it must pass into the hands of the grantee, or some one for him, in such a way as to be beyond the legal control of the grantor.    If merely placed in the hands of a third person, to be by him delivered to the grantee, it is obvious that the grantor might, at any time before the deed was actually delivered, countermand the order and prevent its taking effect.    This is the doctrine of *Bank* v. *Webster*, 44 N. H., 268, and the cases cited.    If, in any case, there could be a valid delivery to a third person for the use of the grantee, when such grantee had no knowledge of it, and had given such third person no actual authority to receive it, it must be in cases where the law will pronounce the conveyance to be clearly beneficial to the grantee, and, therefore, presume his assent to it; but, to give effect to such delivery, when the assent of the grantee may be presumed from the beneficial nature of the conveyance, it must be placed beyond the control of the grantor, and not put into the hands of a third person merely to be delivered to the grantee, for then such third person is merely the agent of the grantor, who, at any time before actual delivery to the grantee, may recall it; but it must be delivered to such third person as the agent of the grantee, and received by him in that capacity, and then, if the law will, and never till then, from the beneficial nature of the conveyance, presume the assent of the grantee, the delivery is complete, and the estate passes at once."    And it was held no delivery.    The grantor must part so completely with control

as not to be able to recover the deed, in replevin, from the depositary, and the depositary must take possession of the deed as the agent of the grantee, not of the grantor.

Now, curiously and strikingly enough, just that very identical test is the one adopted by this court in *Cocks* v. *Simmons*, 57 Miss., 202, George, C. J., saying: "The test as to whether a deed has been sufficiently delivered is the right of the grantee to have that specific deed put into his actual possession by whomsoever may hold it, and not merely to have a deed made in pursuance of a pre-existing equity. Whenever he has this right to a specific deed already drawn up, the deed has been effectually delivered, and the title passed." But, never till then, the New Hampshire court says; and this right he can only have against a depositary when the depositary holds for him as his agent. In this case, as in *Kane* v. *Mackin*, 9 Smed. & M., 392, the grantor was nominal (a commissioner in one case, a sheriff in the other), and the court very properly alluded to the marked difference, as to the question of intent, between a nominal and a real grantor. What cares a sheriff or commissioner as to who purchases? The owner, parting with the property that was his home and world, destines it with jealous care to the special ones intended. In *Exum* v. *Canty*, 34 Miss., 533, which was a case where the deed was recorded (p. 536, top), and delivered to the beneficiary (p. 537), who then knew its contents, the court say (the contest being, as in *Wall* v. *Wall*, 30 Miss., 91, whether it was a will or a deed): "Such an instrument takes effect upon its execution and delivery, as to the interest of the beneficiaries, and concludes the grantor of the right of further disposition." Here the same test is recognized. It must conclude the grantor of the right of further disposition.

In *Harkreader* v. *Clayton*, 56 Miss., 390, the court announces, with emphasis, the same doctrine, saying: "The final and complete act which makes a deed effectual is delivery. Whilst no specific formalities are necessary, the grantor must

consent that the deed shall pass irrevocably from his control, and the grantee must accept it.'' So, in *Johnson* v. *Brooks*, 31 Miss., 19, the court say: '' We have been able to find no case in which a writing signed by a party and kept in his possession, without delivery to the other party, has been held to be a compliance with the statute; and it would appear strange that such a paper could have that effect, when it is entirely within the power of the party to destroy it, and prevent its being used as evidence of the contract.'' It was a case of a deed of bargain and sale acknowledged by the husband. Precisely the same doctrine, adopting the same test, is clearly and emphatically announced in Connecticut (*Merrills* v. *Swift*, 18 Conn., 257); in Kentucky (*Bell* v. *Bank*, 11 Bush, 34); in South Carolina (*Cloud* v. *Calhoun*, 10 Rich. Eq., 358); in New Jersey (*Bank* v. *Reckless*, 5 N. J. Eq., 430), the court saying emphatically: '' To render the leaving of a deed by the grantor with the clerk for registry, and the registration thereof, a good delivery to the grantee, it must be left for the grantee, or with such directions from the grantor as to amount to a delivery, and authorize the grantee to take it from the clerk ''); in Georgia (*Wellborn* v. *Weaver*, 17 Ga., 267; 63 Am. Dec., 235, and see note, page 243, specially); in Maryland (*Duer* v. *James*, 42 Md., 492); in England (Bac. Abr. '' Feoffment,'' p. 212: '' It [delivery] consists in parting with its possession [the deed] by the grantor to the grantee, or their respective agents, in such manner that it cannot be recalled ''); by the supreme court of the United States (*Younge* v. *Guilbeau*, 3 Wall., 641; 18 Law Ed., 263, Justice Field delivering the opinion of the court, and saying: '' To constitute such delivery, the grantor must part with the possession of the deed or the right to retain it ''); and in Illinois, Indiana, Iowa, Maine, Massachusetts, Michigan, Missouri, New York, North Carolina, Ohio, Pennsylvania, Tennessee, and Wisconsin, the cases in these states being carefully collated in 9 Am. & Eng. Enc. L. (new ed.), p. 155, par. 3.

Some point is attempted to be made in this case out of the

fact that W. B. Barnard, Sr., was one of the grantees in certain contingencies, as well as trustee. This does not alter the rule, as is clearly shown in a perfectly similar case in that respect (*Wilson* v. *Wilson*, 158 Ill., 572–574, s.c. 41 N. E., 1008), the court saying: "The undisputed facts in the case are that, on September 2, 1889, Col. Wilson was the owner of a large farm situated in McDonough county; that, on said day, he made and acknowledged a deed purporting to be an absolute and unconditional conveyance of said land to the defendants, Lizzie, Ed. and Samuel, and shortly thereafter handed the same to Lizzie, in whose possession it has remained ever since; that said deed was never recorded until the day following the death of the grantor, who died intestate November 30, 1893, and left surviving him the complainants and the defendants, Lizzie, Ed. and Samuel, the only heirs at law. At the hearing a large number of witnesses were examined, most of whom were put upon the stand for the purpose of disproving, on the one side, and, on the other, of establishing the fact of delivery of the deed in controversy. Lizzie Elson and Samuel Wilson were permitted to testify, over the objection of complainants. This was error. Complainants sue as the heirs of their deceased father, whose title is here disputed, and the defendants seeking to disprove such title, were, therefore, not competent witnesses. *Hayes* v. *Boylan*, 141 Ill., 400, s.c. 30 N. E., 1041; *Comer* v. *Comer*, 119 Ill., 170, s.c. 8 N. E., 706. Disregarding such of the testimony as was incompetent, a clear preponderance of the evidence shows that Col. Wilson always treated the land in question as his own, as well subsequently as prior to the alleged delivery of the said deed. The land remained on record as his until after his death, up to which time he paid the taxes thereon with his own money. At different times subsequent to said alleged delivery he made repairs on the premises, re-leased the land to tenants, collected the rents for his own use, advertised the land for sale in a public newspaper, and, on March 1, 1890, made and delivered to O. F.

Piper a mortgage deed thereon, to secure a loan of $500. All of those acts were done with the knowledge and acquiescence of the defendants. The evidence further shows that one of said leases was drawn up by defendant Samuel Wilson, and signed by him as agent for his father, who was named therein as owner and lessor. The defendants always spoke of the land as their father's, and so treated it. In a replevin suit, wherein Col. Wilson was plaintiff, tried in September, 1891, Samuel Wilson swore that this land belonged to his father and that he and his brother Ed. were their father's tenants.

"There also appears in evidence the following letter, written by defendant, Lizzie Elson and mailed by her to complainant, Alice M. Tuck: 'Peoria, Ill., Feb. 28, 1894. Dear Alice— Your letter was received to-day noon. . . . I have had that deed in my possession for some time. Father gave it to me, and told me to keep it, and, if he never called for it (which he never did), that at his death I must have it put on record. He saw the deed shortly before he went down to Jim's. He was well then, and it was still his desire that I should keep the deed. It is not likely he would change his mind in so short a time. Lizzie.' Such a state of facts is not at all consistent with the claim that Col. Wilson delivered this deed to the defendants. The mere placing of the deed in the hands of one of the grantees did not, of itself, necessarily constitute a delivery. In such a case, the inquiry is, What was the intention of the parties at the time? And that intention, when ascertained, must govern. *Jordan* v. *Davis*, 108 Ill., 336; *Bovee* v. *Hinde*, 135 Ill., 137, s. c. 25 N. E., 694; *Oliver* v. *Oliver*, 149 Ill., 542, s. c. 36 N. E., 955. It seems clear that this deed was placed by her father in the hands of Lizzie-Elson with the mutual understanding that if he at any time desired to withdraw it she should return it to him, but that 'if he never called for it' she should, at his death, have it recorded. In other words, there was no intention at the time to convey a present, absolute title to the defendants, but the intention was that the deed should take

effect at the grantor's death, and vest the title in the defendants, provided he died without having recalled the deed. This was in no sense an attempt to deliver to the grantees in escrow, as contended by counsel for the defendants, but was merely a transfer of the possession of the deed to one of the grantees, the grantor at the time, however, reserving a future control over it. To constitute delivery of a deed, it must clearly appear that it was the intention of the grantor that the deed should pass the title at the time, and that he should lose all control over it. A deed for an interest in land must take effect upon its execution and delivery or not at all. *Bovee* v. *Hinde, supra; Cline* v. *Jones,* 111 Ill., 563; *Stinson* v. *Anderson,* 96 Ill., 373. We think the mortgaging of the land by Col. Wilson subsequently to his placing the deed in the custody of Lizzie Elson, his offering the land for sale, and exercising the other acts of ownership over it heretofore mentioned, were sufficient to constitute a withdrawal of the deed. But, even if they were not, the deed is nevertheless void, for it was not to take effect until the death of the grantor. That was an attempt to make a testamentary disposition of property without complying with the statute of wills. *Cline* v. *Jones, supra.*"

Of course, it is not intended, in anything we have said as to the crucial test of delivery, to declare that the mere fact that the grantor, after a delivery once effectually made to a grantee or a depositary, subsequently gets physical possession of the deed, at all affects the validity of the delivery. Once effectually delivered, always effectually delivered, is the law. But supposing a contest as between grantor and grantee, or grantor and depositary, as to the possession of the deed, the test of delivery and of the right of possession is as stated. And Washburne, summing up the law in England and America, says (3 Washb. Real Prop., p. 285, sec. 20): "So long as the grantor retains the legal control of the instrument, the title cannot pass, any more than if he had not signed the deed." Page 283: "In the first place, the grantor must give up con-

trol or dominion over the deed."    Page 289: "But so long as the deed is within the control of the grantor, and subject to his authority, it cannot be held to have been delivered."    Page 290: "It would be otherwise if the grantor retained control over the deed as to its delivery, as when he delivers it to a third party to keep and deliver to the grantee named unless he should call for it again."    These authorities, abundantly sustain, in every feature, the propositions we laid down at the outset; and we close these citations with the pointed and decisive language of the court in *Fisher* v. *Hall*, 41 N. Y., 421, where the court, after announcing the doctrine contended for, says: "Several old authorities in equity were cited upon argument for the purpose of showing the rule to be different from this statement of it, and it must be confessed that they appeared to maintain that result; but they are evidently so directly opposite to the entire current of modern authority, both in the courts of this and other states, as well as of the United States, as to require them to be repudiated by this court. A rule of law by which a voluntary deed, executed by the grantor, afterwards retained by him during his life in his exclusive possession and control, never during that time made known to the grantee, and never delivered to any one for him, or declared by the grantor to be intended as a present, operative conveyance (this deed was duly acknowledged and attested. Page 421), could be permitted to take effect as a transmission of the title, is so inconsistent with every substantial right of property as to deserve no toleration whatever from any intelligent court, either of law or equity."

Let it always be kept in mind that W. B. Barnard's deposition is out of the case.    Counsel for appellants, however, cited, as sustaining the contrary view, the following much misunderstood two authorities, which, examination shows, support our view squarely: *Souverbye* v. *Arden*, 1 Johns. Ch., 240, and *Doe* v. *Knight*, 5 Barn. & C., 671.    James Arden and Eliza Arden had two daughters—Eliza, who married Boquet, and

Louisa, who married Sterry.    James Arden made at the same
time two deeds, duly executed—one to each.    One deed is con-
sidered in *Souverbye* v. *Arden*, 1 Johns. Ch., 240, the other
in *Sterry* v. *Same*, *Id.*, 261.    *Sterry* v. *Arden* was appealed
from Chancellor Kent's decision to the supreme court of New
York, and is reported in 12 Johns., 536 (*Verplank* v. *Sterry*).
The two cases are identical.    Says Chancellor Kent, in *Sterry*
v. *Arden*, 1 Johns. Ch., 266: "The same questions arise in
this case as in that of *Souverbye* v. *Arden*, on the delivery of
the deed.    The two deeds were drawn and executed together,
and their history is in all respects the same.    The proof in each
cause is the same to every essential purpose."    In *Souverbye*
v. *Arden*, Chancellor Kent says (1 Johns. Ch., 254): "The
conclusion from all this testimony is that the grantor had not
the custody and possession of the deed until some time after the
death of the mother of the plaintiff, but that the deed was in
the actual possession of the plaintiff, or of her mother as her
agent or bailee.    I am perfectly satisfied of the truth of this
conclusion."    In the supreme court, the court say (12 Johns.,
537): "It appears he acted openly and decidedly, by leaving
the deed in the possession of the daughter," etc., "and shows
decisively that previous to his taking it from his daughter he
had assumed no control over it."    And it is perfectly plain
from this case (pp. 536, 537, 545, 547–550), and from *Sou-
verbye* v. *Arden*, 1 Johns. Ch., 244, that the two deeds were
delivered directly by the grantor to the grantees—the two
daughters.    The case is therefore entirely out of point, and
supports our view.    Indeed, the supreme court say, in 12
Johns., 545: "It is unreasonable to suppose that this deed was
intended to be subjected to the future control of the husband."
In *Cook* v. *Brown*, 34 N. H., 473, this case is fully stated as
to this point, and we have given the extract in full above.    The
court say that in *Doe* v. *Knight* "the point was distinctly put.
The court held the validity of the deed to depend upon the
question whether the delivery to the depositary was or not sub-

ject to the future control of the grantor." It is also fully cited
and explained in *Parker* v. *Dustin*, 2 Fost. (N. H.), 424, and
in 3 Washb. Real Prop., 289, 290. The law was stated to be,
in *Doe* v. *Knight*, just what the authorities above say, but
the jury found, on the facts, that there had been a delivery.
Of course, judgment followed on the verdict. But the crit-
icisms given by Washb. Real Prop., pp. 289, 290, as having
been made upon the case in *Prutsman* v. *Baker*, 30 Wis., 644,
and in *Oliver* v. *Stone*, 24 Ga., 63–70, are only just when un-
derstood as condemning the finding of the jury, for the law in
*Doe* v. *Knight* is just the law announced in all the cases above,
and in the Georgia and Wisconsin cases. But, singularly
enough, both these cases were relied upon in *Fisher* v. *Hall*,
41 N. Y., 422, as holding the same doctrine learned counsel
for appellants deemed them to hold; but the court say, in
repudiating the doctrine: "It is not sanctioned by anything
required by the decision of *Doe* v. *Knight*, 11 E. C. L., 632,
s. c. Barn. & C., 671, for there the mortgage in controversy
was made pursuant to an understanding on the part of the
mortgagee that the debt due to him was to be secured by the
mortgagor, and it was first declared by him [otherwise than by
acknowledgment] to be his act or deed, and afterwards actually
delivered to his sister for the mortgagee." The case was tried
before the jury, and disposed of by the court upon the point
whether even that was sufficient to constitute effectual deliv-
ery. The case of *Souverbye* v. *Arden*, 1 Johns. Ch., 240, was
equally as pointed in this respect in its circumstances, and the
language of the chancellor, it will be found upon examination,
was not designed to extend beyond them in his decision of the
case. The authorities upon what is necessary to create a legal
delivery of a deed are well collected in 2 Phil. Ev. (Cow. & H.
Notes, 3d ed.), pp. 826–831, and their general result is stated
to be that, "to constitute a complete delivery of a deed, the
grantor must do some act putting it beyond his power to
revoke."

This disposes thoroughly of these two cases. Perhaps counsel fell into this error by supposing they supported in all its broadness the doctrine to which they are cited in *Wall* v. *Wall*, 30 Miss., 97. Even if they did, as manifestly they do not, support the doctrine of *Wall* v. *Wall* in all its looseness of statement, appellants could derive no comfort from the reflection, for even there the court say, if the grantor "intended it should be considered as executed and delivered, it will not be rendered invalid for want of delivery;" and, at pages 94, 95, the court say the grantor delivered it to his brother. The real question in *Wall* v. *Wall*, as shown by Smith, C. J., in *Mc Willie* v. *Van Vacter*, 35 Miss., 453, was not whether a deed was delivered, but whether the paper was a deed or a will. It is not to be understood as deciding anything but that, properly regarded. The doctrine of all the late cases (*Davis* v. *Williams*, 57 Miss., 843; *Weisinger* v. *Cock*, 67 Miss., 511, s.c. 7 South., 495; *Hall* v. *Barnett*, 71 Miss., 37, s.c. 14 South., 732; and *Saffold* v. *Horne*, 72 Miss., 470, s.c. 18 South., 433) is in perfect support of the views herein announced. In this last case Saffold himself put the deed on record, and recognized the grantee's interest thereunder. The assault on the deed was on the ground of fraud, and failed.

We concur with the learned chancellor that the deed was never delivered, and affirm his decree in that regard. We think the chancellor erred, however, in the amount of the rent, which should not have exceeded, on the proof, $1,500, and in rendering any other than a mere personal decree for that. It should not have been declared a special lien on the lands named. The decree is affirmed in all things except in these two features, and as to them it is reversed, and a mere personal decree will be entered here for $1,500 rent. *So ordered.*

APPLICATION TO AMEND DECREE AND MANDATE, FIRST APPEAL.

After the delivery of the foregoing opinion and the entry of the decree of the supreme court in accordance thereto, the ap-

pellants moved the court to amend the decree and mandate so as to authorize them to file a bill of review in the court below, based on newly discovered evidence. The motion was submitted to the court, and upon deciding the same the following opinion was delivered:

WHITFIELD, C. J., delivered the opinion of the court on application to amend decree and mandate, first appeal.

This is an application to have the decree and mandate in this case (the mandate not having gone down to the lower court, and the record still being in this court) amended so as to recite that our decree is without prejudice to any right appellants may have to apply to the court below for leave to file a bill of review herein, based on newly discovered evidence. The settled rule of practice is that an application for leave to file a bill of review must be made to the court of original jurisdiction, where the action was begun, and whose decree is sought to be reviewed. 3 Enc. Pl. & Prac., 573-575, and notes. A distinction has sometimes been made (where an appeal has been prosecuted, and the appellate court has rendered a decree) between cases affirmed and reversed, as to whether the application should be made to the appellate court or the trial court, it being said that where the appellate court has reversed and remanded the case, application should be made to the appellate court for leave to file the bill of review in the trial court, since otherwise such an application to the trial court would be to review, not its own decree, but the decree of the appellate court, which proceeding, it is said, would be unseemly. *Kimberly* v. *Arms* (C. C.), 40 Fed., at page 554; *Southard* v. *Russell*, 16 How., 547, s. c. 14 L. Ed. 1052. If this were the true rule, it would not apply here, since here the decree was affirmed. But the true distinction is not as between decrees affirmed and reversed, but between the bills of review based on alleged error of law apparent on the record, and those based on newly discovered evidence. In the former case no bill of

review could be filed at all when the appellate tribunal had affirmed. In the latter the application should be made to the court below, whether the case has been affirmed or reversed, since in the latter case the effort is to secure a review on facts new and material, different from those supporting the original decree. It is, in such case, not so much a review of the original decree, looking to the evidence alone on which it was rested, as a rehearing because of such new and material facts. We cannot approve what is said on this subject in *Southard v. Russell*, supra. We approve and adopt as the correct rule what is said in *Putnam* v. *Clark*, 35 N. J. Eq., 149, which is also approved by the learned editors of 3 Enc. Pl. & Prac., 575, and also the courts whose decisions are cited in note 3, p. 574, of said volume.

The supreme court of Massachusetts, in *Gale* v. *Nickerson*, 144 Mass., 418, s.o. 11 N. E., 719, emphatically approve the rule we have announced, and which is announced in *Putnam* v. *Clark*, *supra*, saying: "By entertaining a motion for a new trial the probate court does not overrule the decision of this court. It decides that, by reason of newly discovered evidence, a new case is made out, which this court has never passed upon." Say the court, in *Putnam* v. *Clark*, *supra:* "This is an application to this court, by petition, for leave to file a bill of review, on the ground of newly discovered facts, in a cause which was decided herein in 1880, on appeal from the final decree of the chancellor dismissing the complainant's bill. By the decree of this court that decree was affirmed and the record remitted. There is, therefore, no record here now. In my judgment the application cannot be entertained in this court, but must be made in the court of chancery. It is urged, however, that in *Jewett* v. *Dringer*, 31 N. J. Eq., 586, where such an application, on the ground of fraud and newly discovered evidence, was made to that court after reversal of the decree on appeal, it was held that it would not entertain an application to file a bill of review to revise its decision after that de-

cision had been passed upon by this court. That view has, indeed, the countenance of the opinion of Chancellor Walworth in *Stafford* v. *Bryan*, 2 Paige, 45, a case cited in the vice chancellor's opinion in *Jewett* v. *Dringer*, and of the supreme court of the United State in *Southard* v. *Russell*, 16 How., 547, s.c. 14 Law Ed., 1052. In the latter case the court distinctly said that a bill of review will not lie, in the case of newly discovered evidence, after the publication or decree, where a decision has taken place on appeal, unless the right is reserved in the decree of the appellate court, or permission be given on an application to that court directly for the purpose. But it will be found that those decisions have neither the authority of the books nor of adjudged cases for their support. The court of chancery has inherent power, without the consent of the appellate tribunal, to review, on the ground of newly discovered evidence, its decree, though it has been passed upon on appeal, and no principle of practice requires that it shall refrain from doing so until the consent or countenance of the superior court shall have been obtained. These propositions are established by the following citations: *Needler* v. *Kendall*, Finch., 468; Mitf. Eq. Pl., 88; Coop. Eq. Pl., 92; 2 Daniell Ch. Prac., 1579; Story Eq. Pl., §§ 408, 418; 2 Hoff. Ch. Prac., 12; *Tommey* v. *White*, 1 H. L. Cas., 160; *Flower* v. *Lloyd*, 6 Ch. Div., 297; *Haskell* v. *Raoul*, 1 McCord Eq., 22; *Perkins* v. *Lang*, reported in a note to that case, and *McCall* v. *Graham*, 1 Hen. & M., 13. It must be borne in mind that there is a distinction in practice between an application for review on the ground of error on the face of the decree, and one based on newly discovered evidence. In the former no bill of review can be filed after the decree has been passed upon by the appellate tribunal, but in the latter it is otherwise. "Where a decree," says Judge Story, 'has been affirmed in parliament, it may well be doubted whether a bill of review for errors apparent upon the face of the decree can be brought, for the highest appellate court has pronounced, in effect, that it is not

erroneous. The same objection does not apply where the bill of review is for matter of newly discovered evidence.'' In the ancient case of *Needler* v. *Kendall*, cited above, there was a bill of review, apparently for newly discovered facts, after a decision of the cause on appeal, and it was evident from the report that no leave of the appellate court was deemed necessary. In the recent case of *Flower* v. *Lloyd* (1877), 6 Ch. Div., 297, the plaintiffs obtained a judgment, which was reversed on appeal. After the order on appeal was passed and entered, the plaintiffs applied to the appellate court to have the appeal reheard, with new evidence. It was held that that court had no jurisdiction to rehear the appeal. Sir George Jessel, M. R., speaking on the subject of the practice, said: '' There was another totally different class of cases where you discovered subsequent matter which showed that the decree was wrong, although there had been no fraud in obtaining it. That was called a supplemental bill, in the nature of a bill of review, which brought the new matter forward, and again enabled the court to do justice and get rid of the original decree. That always required leave. Now, that being so, supposing the court of appeal has no jurisdiction to do what is now asked, there would be means of obtaining justice by an original action, which either would or would not require the leave of the court, according to circumstances. But the leave to be given, when required, was always to be obtained from the court in which the bill was filed, or in which the action had been brought.'' And the court further adds: '' In *O'Brien* v. *Hulfish*, 22 N. J. Eq., 471, the affirmance was without prejudice to an application to be made to the court below to modify, open or set aside the decrees so as to reach the merits.''

This court exercises appellate, not original, jurisdiction. It follows that this court cannot entertain an application for leave to file the bill of review herein. To do that we would have to pass on the right to file the bill, going into the facts shown by the affidavits. That question—whether

the facts set out in the affidavits in support of the ap-
plication warrant the filing of the bill of review—is one for the
exclusive determination of the chancery court.    Nor do learned
counsel for appellants ask this, as we understand them. · Be-
cause of the doubt, on the authorities, in the absence of a de-
cision on the precise point by this court, as to where the appli-
cation for leave to file the bill should be made, this court having
affirmed the decree, they merely ask that the decree and ·man-
date be amended so as to show that the affirmance does not cut
them off from any right they (appellants) may have to ask leave
of the court below to file the bill.    The affirmance, on the view
we here announce as to the true rule of practice, has no such
effect, and the application is granted. *

SECOND HEARING, SECOND APPEAL.

When the case was remanded, the complainants moved the
chancery court, under code 1892, § 53, for a decree for the
rents of the land in controversy, pending the appeal to the su-
preme court, against defendants and the sureties on their appeal
bond.    On the hearing of this motion, defendants offered evi-
dence to show that in the year 1899 W. H. Barnard, who was
administrator of the estate of Eudora J. Barnard, deceased,
was in possession of said lands in dispute, and collected the
rents for the year 1899 for the purpose of applying the same
to the payment of the debts duly probated against the estate of
the said Eudora J. Barnard, deceased, and that said decedent
left personal estate to the amount of $400, and that debts had
been probated against said estate to the amount .of $2,700,
exclusive of interest, which debts had not been paid at the
beginning of the year 1899, and that the rents of the year 1899
had been applied to the payment of said debts, *pro tanto*, by

* After the cause reached the court below, the complainant, Sarah L. Hall, made appli-
cation there to file a bill of review, based on newly discovered evidence. The application
was denied by the chancery court, and the applicants appealed therefrom to the supreme
court, but the decree denying the leave was affirmed. The supreme court did not deliver
any written opinion on this affirmance.

said administrator, and that said Eudora Barnard left no other estate, except said personal property and said lands. On objection by complainants, the court declined to admit said testimony, and granted the motion and rendered a decree against the defendants and their sureties on the appeal bond for the sum of $1,469.72. Defendants then filed a motion to set aside the decree, and, in support of said motion, filed the affidavit of J. C. Hall, the substantial averments of which are as follows: That he is agent of defendants, and that none of them, nor said sureties, were in possession of any of said lands during the year 1899 or 1900, and that the same were in the actual possession and control of W. H. Barnard, administrator of the estate of Eudora J. Barnard, deceased, duly appointed by the chancery court of Sharkey county, and that said administrator collected the rents on said lands for the year 1899, and used the same in payment of the just and probated debts of the said Eudora J. Barnard, and for which said estate was liable, and that the rents of 1900, when collected by him, were devoted to the same purpose; that the personal estate left was very small in value, and that the same had been used in the payment of debts due by said decedent, and was wholly insufficient to pay the same; that there was justly due said defendants, for the use and occupation by the said Eudora J. Barnard of their two-thirds interest in the 88 acres in the S. W. ¼ of section 17, and the W. ½ of N. W. ¼ of section 20 for the years 1895, 1896 and 1897; that she was in the sole and exclusive possession of the said lands during the said years, and appropriated and used all the rents and issues therefor for her own benefit, and that the same amounted to the sum of $293 annually, making a total of $879 for the three years, which sum said defendants are entitled to set off against any amount claimed for rent under said motion; that all the cleared land upon the property involved in this controversy is located in sections 17, 20 and 21, and that the cleared land in section 17, cultivable, is only 134 acres, and that in

section 21 about 25 acres, making a total of 159 acres in the said two sections; adding thereto one-third of the 88 acres in sections 17 and 20, found to belong to complainants, the total amount in cultivation for which complainants could make any claim would be 188 acres; this is all for which any claim for rent could be made; the only land for which any rent could be charged or collected, is the cultivable land; that wood land on said premises has no rental value whatever; that said cultivable land rents for five dollars per acre, commencing on the first day of January and terminating on the thirty-first day of December of each year, and that is the full rental value thereof, so that the total rent of said property is $940, from which must be deducted the amount paid for taxes, to-wit: $124.03—the taxes in all instances being paid by the proprietor—leaving a total rental value of said land of $815.97; all agricultural lands in Sharkey county and throughout the delta, rent, not by the month, but by the year, and only for the year commencing on the first day of January and terminating on the thirty-first day of December, and this custom is so universal that all persons have notice thereof; that in the year 1900 said lands were rented by the said administrator to different parties at the rental value of five dollars per acre per annum, which rent was due and payable, as was well known to complainants, in the fall of the year, when the crops matured; that complainants had a writ of possession issued in June, ousting defendants and said administrator from the possession of said land, and are now claiming said land as their own and in their possession, and that by so doing, and as said rents are not due until the end of the year, the said complainants are justly chargeable with said rents for said year 1900, and, if said tenants are to be disturbed at all, such conditions should be imposed as would protect defendants, and enable them to recover a proportionate share of said rents and said taxes for the year 1899, to wit, $124.03, the same having been paid by

said administrator.    The motion was overruled by the court
below, and defendants appealed.

*Miller, Smith & Hirsh, H. J. McLaurin* and *Dabney &
McCabe,* for appellants.

The decree for rents appealed from is based upon the theory
that as the original bill averred that the rents and profits of the
lands were worth $1,500 per annum, and the averment was
not denied by the answer, defendants could make no question
but that said rental value remained forever the same.    Under
code 1892, § 53, it was the duty of the court below to ascertain
by competent proof the value of the use and occupation of the
lands.    Even if defendants be conclusively bound by their fail
ure to deny the averment of the bill that the lands were of the
annual rental value of $1,500 when the answer was made, yet
it does not follow that they have been so valuable ever since.
Besides, why should not a court of equity, in granting a decree
for the use and occupation of lands, protect the party in pos-
session who has used the rents in paying taxes and other
claims which were valid charges on the lands.    There is no
reason, and the court below erred in refusing to do so.    The
lands in this case depreciated greatly in rental value after the
answer was filed.

*Theodore McKnight,* for appellees.

No proof whatever, on the part of the appellants, was ad-
missible under the conditions of the pleading at the time of the
trial of the motion.    The trial stood upon the pleadings and pro-
ceedings in the case, with all parties ready for trial, and with
no evidence in opposition to the granting of a decree for rents,
and with the admitted fact that the lands were worth $1,500
per year and complainants were entitled to recover their share
of the rents of said lands, for the time between April 24, 1899,
and June 5, 1900, the sum of $1,469.72.    Section 53, code of
1892, imposes upon the court the duty of ascertaining the value

of the use and occupation of land, but it does not say that same shall be done by "competent proof," as stated by counsel. It is to be ascertained, either upon the pleadings, if undisputed, or by the pleadings and proof, if the pleadings be disputed—in other words, according to the circumstances of each particular case which may be remanded—but it certainly would not or could not be successfully contended for in this case, or in any case, that this section of the code should be construed to effect an opening up of the whole case, as granting permission to offer proof upon the undisputed or admitted allegations of the bill, or to set up for the first time any thing or matter which existed at the time of the original pleadings. Of course, if appellants had paid to appellees the money for the use and occupation of the land, and these payments had been made before the filing of the motion, appellants would be entitled to show this upon proper answer or other pleadings or notices in response to the motion for decree, under § 53 of the code, but no such state of fact existed here, and no such pleadings have been filed in this suit. I do not contend, as counsel seem to think, that the original decree was *res adjudicata* in determining the amount of subsequent use and occupation, but I do contend that the pleadings in the cause govern the determination of the amount, and that inasmuch as the rental value was alleged in the bill and not denied, and, therefore, admitted by the answer to be true, and inasmuch as there is nothing set up in defense to said motion as having occurred since the original pleadings, that, therefore, they are bound by the original bill and answer, and cannot now be heard to say that said lands were not worth the sum of $1,500 per year, and that if in any event they could not have done this, it could only have been upon properly amended pleadings, showing a change in the situation since the filing of the original bill herein, and that even if this could be done at all, it certainly could not be done by the simple introduction of proof, without pleading of any sort whatever.

WHITFIELD, C. J., delivered the opinion of the court.

The real controversy in this cause, on the former hearing, was as to the title.    The circumstances of this case are peculiar. The appellants thought themselves the true owners.    Their admission in the pleadings that $1,500 per annum was a reasonable rate for the rent, related to rate alone.    It was not an admission that any rent was due, for that was denied by the assertion of title.    The appellants said: "We are owners, and owe no rent.    If it should turn out that you are owners, we agree that, as the value of the land now stands, $1,500 is, as to rate, a reasonable rate."    They were not precluded on this motion, made under § 53 of the Annotated Code of 1892, from showing that the value of the lands was increased or decreased, if in truth there had been any change.    If there had been no change, their admission that $1,500 was a reasonable rate is binding on them.    If there had been change, the rent should be increased or diminished as the evidence required. And so as to the offer to show that the administrator had actually paid off taxes and debts that were a charge on the land, the $400 personalty having been exhausted, and $2,300 of such debts being alleged to have remained over after such exhaustion of the personalty.    If the truth was that the administrator had discharged with the assets of the year 1898 taxes and debts chargeable on the land by law, the appellees cannot take the lands without crediting the rents with such amounts so paid. Justice demands that.    And so, if the truth was that Mrs. Eudora J. Barnard was in the use and occupation of two-thirds of certain lands, the property of appellants, in 1895-96-97, then appellees, claiming title under her, must stand chargeable with the value of such use and occupation, as an equitable set-off against their demand for rents of the other third, and of other lands coming to them through Mrs. Barnard, under the very exceptional circumstances of this case.    The court, in passing upon this motion, should, with all the parties before it, so deal with the situation as to effectuate final and complete

justice between the parties.   Of course, the appellants will be
held to competent and satisfactory proof that the alleged debts
against Mrs. Eudora Barnard were against her, and were legal
debts.   The appellees are entitled to the amount of rent from
April 24, 1899, to June 5, 1900, to wit: $1,469.72, as found
by the chancellor, the basis of computation being correct, sub-
ject to such equitable set-offs as indicated, when supported by
competent and satisfactory proof, if there had been in that time
no material change in the condition and value of the lands.
The appellants are protected by the agreement on file from any
double payment of the rent for the first five months of 1900.

*The decree is reversed and cause remanded, to be proceeded
with in accordance with this opinion.*